Winfred "Tiger" NELSON, Jr. *v.* STATE of Arkansas

CR 94-404                                      883 S.W.2d 839

Supreme Court of Arkansas
Opinion delivered October 3, 1994
[Rehearing denied October 31, 1994.*]

*Bowden Law Firm*, by: *David O. Bowden*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Winfred "Tiger" Nelson, appeals a judgment of the Grant County Circuit Court affirming a judgment of the Sheridan Municipal Court which convicted appellant of entering posted land in violation of the posting laws enacted by Act 35 of 1989, as codified at Ark. Code Ann. §§ 18-11-401 to -406 (Supp. 1993). The municipal court convicted appellant of a Class B misdemeanor, assessed a $500.00 fine and costs of $63.25, and sentenced him to ten days in jail, suspending the jail time and $400.00 of the fine. Because resolution of this appeal requires interpretation of the posting statutes, juris-

diction is properly in this court. Ark. Sup. Ct. R. 1-2(a)(3).

The particular statute at issue here is section 18-11-403, entitled "Unlawful entry upon land — Penalty" by the codifiers; it provides as follows:

(a)(1) No person shall enter for recreational purposes upon real property posted pursuant to this subchapter without written permission of the owner or lessee of the real property.

(2) It shall be unlawful for any person to enter upon any real property posted under the provisions of this subchapter without the written consent of the owner or lessee of the real property.

(3) Provided, however, it shall be an affirmative defense to prosecution under this subchapter that consent was given by a person holding himself out to be the owner, lessee, or agent of the owner or lessee, of the property.

(b) Any person who knowingly enters such real property without written consent shall be guilty of Class B misdemeanor.

This case was submitted to the circuit court on stipulated facts. We summarize them as follows:

The land in question is owned in fee simple absolute by International Paper Company ("IP").

The rights to hunt and harvest game on the land in question are leased to McElroy Hunting Club, Inc., ("the Club") a non-profit corporation.

As to the hunting rights, the relationship of lessor—lessee exists between IP and the Club. The Club has no rights or interests in the land in question, rather it has rights only in the animals located thereon.

As far as the physical requirements of sign placement and marking of boundaries are concerned, the land was posted in compliance with the posting statutes. The land was posted by the Club without the permission or assistance of IP.

While armed with a shotgun, appellant entered the land covered by the hunting rights lease during turkey season on April 12, 1993, without the permission or consent of IP or the Club.

Based on appellant's April 12, 1993 entry on the land, A.R. "Pete" McElroy, president of the Club, swore out a warrant for appellant's arrest for violating the posting laws, Act 35 of 1989. Appellant was before the court on that warrant.

The parties also stipulated to the exhibits admitted in the municipal court and filed trial briefs with the circuit court relating to appellant's motion to dismiss the charges against him. The circuit court entered a judgment affirming the conviction in municipal court, finding that the lease between IP and the Club conveyed to the Club the exclusive right to enter the land for the purpose of hunting and that the Club had a possessory right in the land sufficient to confer standing to post the land.

As his sole argument for reversal, appellant contends his prosecution under the posting statutes was inappropriate because both the lease agreement and the stipulations make it clear that the Club was not "the owner or lessee of the real property," as those terms are used in the posting statutes. Therefore, argues appellant, the Club had no authority to post the land.

We note at the outset that appellant was not charged with criminal trespass pursuant to Ark. Code Ann. § 5-39-203 (Repl. 1993). Thus, we are not concerned with that crime or statute.

We first consider appellant's argument as it relates to the lease. He contends the Club had no authority to post the land because the lease required the Club to obtain IP's written consent to do so, and because the record is void of any proof of such consent. Appellant does not cite to us any authority for the apparent premise of his argument — that he, as a non-contracting party, is entitled to rely on a breach of the lease contract as a defense to this criminal charge.

It is well-established that parties are presumed to contract only for their own benefit and not for the use and benefit of a third party, unless it clearly appears that such was the inten-

tion of the contracting parties. *Deason* v. *Farmers & Merchants Bank*, 299 Ark. 167, 771 S.W.2d 749 (1989). Here, the lease between IP and the Club expressly states that the Club is not to post the land without the prior written consent of IP. The lease continues that any approved posting is only to be done with signs bearing the name of the Club and attached to trees of poor quality and form with 1/2 inch staples or aluminum nails. Although other parts of the lease provide that the Club should make every effort to prevent persons other than its members and guests from hunting on the leased premises, IP plainly reserved the right to post the land, presumably to maintain damage control of its timber. The lease clearly does not indicate any intention to benefit possible third-party trespassers such as appellant. Consequently, although appellant is correct in his assertion that the Club did not comply with the lease by obtaining IP's written consent to post the land, the absence of this proof is of no consequence to appellant, since he is neither a party to the lease contract nor an intended third-party beneficiary of it.

We next consider appellant's argument as it relates to the stipulated facts. The issue before us is the interpretation and application of the posting statutes to the facts of appellant's case. Essentially, appellant complains that the Club is not a lessee of IP's real property and therefore could not have posted the real property pursuant to the posting laws. The state responds with the argument that under the common law, one who leases hunting rights acquires rights in the soil equivalent to an interest in the real property itself, not merely an interest in the animals. Thus, responds the state, the Club was a "lessee of the real property" with authority to post the land, and appellant is therefore guilty of violating section 18-11-403(b).

Section 18-11-403 provides a penalty for the knowing unlawful entry upon posted land. It is a penal statute and therefore must be strictly construed resolving any doubts in favor of the accused. *Thomas* v. *State*, 315 Ark. 79, 864 S.W.2d 835 (1993). Nonetheless, even penal statutes must not be so strictly construed as to defeat an obvious intent of the legislature. *Id.* Where the language of a statute is clear and unambiguous and susceptible to a sensible construction, resort to extrinsic and collateral aids in construing it is not permitted. *Britt* v. *State*, 261 Ark. 488, 549 S.W.2d 84 (1977). We observe that the posting

statutes do not define the terms "owners or lessees of the real property." However, these terms are susceptible to a sensible construction. Moreover, our General Assembly has adopted the English common law as the law of this state, unless altered or repealed by statute, Ark. Code Ann. § 1-2-119 (1987), and it is a rule of construction that the common law in force at the time a statute is passed is to be considered when construing the statute. *State* v. *Pierson*, 44 Ark. 265 (1884). Thus, after considering the common law rights of one who leases hunting rights, we conclude it is clear the legislature intended to include lessees of hunting rights in the class of persons referred to as "owners or lessees of the real property" in the posting laws.

This court has recognized that wild animals belong to all citizens of the state and are subject to regulation by the Arkansas Game and Fish Commission, but they are also subject to private ownership arising from ownership of the soil such that one who owns the land may hunt the game thereon. *Farris* v. *Arkansas State Game & Fish Comm'n*, 228 Ark. 776, 310 S.W.2d 231 (1958). This private ownership does not conflict with the state's ownership, but must yield to the state's regulations including open and closed hunting seasons. *Id.* This court has also recognized that the right to hunt and fish, technically known as a *profit a prendre* or a qualified ownership in the land for limited purpose of hunting and fishing, is a valuable and well-recognized right and may be transferred between individuals separately from the land itself. *State* v. *Mallory*, 73 Ark. 236, 83 S.W. 955 (1904). In so recognizing, this court relied on *Payne* v. *Sheets*, 75 Vt. 335, 55 A. 656 (1903), which held that one who was not the owner of land but who had a right to shoot game upon the land had an interest in the soil, as opposed to a mere easement, such that he could maintain an action of *trespass quare clausum fregit* against one entering the land to shoot game without permission.

We recognize the Vermont trespass statute at issue in *Payne* was a civil action for damages by the owner to protect his rights to hunt and fish. We see no reason, however, that the reasoning used there should not apply to this criminal case, given the cited rules of statutory construction and this court's previous reasoning in *State* v. *Mallory*, 73 Ark. 236, 83 S.W. 955, also a criminal case.

These aging principles of the English common law remain intact today and we presume our legislature's knowledge thereof when it enacted Act 35 of 1989. Thus, in construing this statute, it is clear our legislature intended for lessees of hunting rights, such as the Club in the instant case, who are qualified owners of the soil, to have the authority to post the real property such that appellant's prosecution under section 18-11-403 was appropriate.

We observe that the state's stipulation to the "fact" that the Club had no interest or rights in the land may appear at first glance to conflict with its argument. However, we conclude there is no conflict. The determination of the Club's interest in the land as conveyed in the lease is a question of law and the ultimate issue to be determined in this case. The joint stipulations were stipulations of facts and do not affect a court's authority to determine the legal consequence of those facts. *See Cravens* v. *Cook*, 212 Ark. 71, 204 S.W.2d 909 (1947).

The judgment is affirmed.