The Honorable Mike Huckabee Governor of Arkansas State Capitol Little Rock, Arkansas 72201
Dear Governor Huckabee:
This is in response to your request for an opinion on four questions concerning an interpretation of A.C.A. § 7-1-103(3), which addresses prohibited election activities. You state that "[a]n employee of a campaign placed a news release about a campaign event in the press room at the state capitol building for the benefit of the journalists who receive their notices there." You state that it is your understanding that this space "is provided by the state capitol building and these organizations do not pay for the use of that space." Your four questions regarding these facts are as follows:
 1. Whether the placing of a news release regarding campaign activities in the press room at the state capitol building by a campaign employee constitutes a violation of Ark. Code Ann. § 7-1-103(3) (Supp. 1997)?
 2. If the answer to number 1 is yes, whether this action by an employee of a campaign constitutes a violation on the part of the candidate for whose campaign the employee works?
 3. If the answer to number 1 is yes, whether this interpretation also precludes candidates from using the state capitol building steps or rotunda for announcements of candidacy or advocacy?
 4. If the answer to number 1 is yes, whether it is lawful for the state to provide space in the capitol for news outlets who cover political activity and not merely government activity?
I do not have all the relevant facts, and any meaningful decision about whether the conduct you describe violates A.C.A. § 7-1-103(3) must be made by the prosecuting attorney, as the statute is criminal in nature. It is that official who has the authority to evaluate the relevant facts and determine whether prosecution is warranted. From the facts you have presented, however, it is my opinion that the answer to your first question appears to be "no." Answers to your remaining questions are therefore unnecessary.
The provision you mention, A.C.A. § 7-1-103(3) (Supp. 1997), provides as follows:
 It shall be unlawful for any public officer, deputy, or assistant who may be a candidate for the nomination to any office, or who may be a candidate for any office to be voted for at any election, to use any office or room furnished at public expense for his political headquarters or to send out or distribute any letters, circulars, or other campaign literature from a public office or room.
A violation of the subsection above is punishable as a crime and thus the law will be strictly construed. Davidson v. State, 305 Ark. 592,810 S.W.2d 329 (1991); Nelson v. State, 318 Ark. 146, 883 S.W.2d 839 (1994). All doubts will be resolved in favor of the accused. Id. In order to determine whether a violation has been stated, it is necessary to break down and analyze the language composing the subsection. The relevant provision applies to any "public officer, deputy, or assistant" who "may be a candidate" for "any office" to be voted on at "any election." The provision targets the conduct of public officers or employees who are or may be candidates for office. On the facts you describe, the only "public officer" who "may be a candidate" for office is you. You are a public officer and you are (or were at the time) a candidate for the Republican nomination for governor.
It is unlawful for you to "use any office . . . furnished at public expense for your political headquarters" (which I assume is not at issue herein), or to "send out or distribute any letters, circulars, or other campaign literature from a public office or room." It is this last portion of the statute which is implicated by your question. The question is thus whether you, or a campaign employee at your direction, "sen[t] out or distribute[d] . . . campaign literature from a public office or room."
As a threshold matter, several fact questions may arise as to whether the actions of your campaign employees are attributable to you for purposes of this statute, and as to whether a press release amounts to "campaign literature." In addition, questions may arise as to whether you or yourcampaign "sen[t] out or distribute[d] . . . [literature] from a public office or room." (Emphasis added.) No facts have been presented to show that you or your campaign sent out or distributed the literature in question "from" any place within the State Capitol. It may be that the releases were deposited with, or placed in, a publicly-funded office or room, and that the press room was, with respect to the campaign's actions, the destination of the literature, but not its distribution point.
In any event, even assuming all these threshold fact questions were resolved to invoke the statute, it is my opinion that application of the relevant statute to these facts would not be consistent with the legislative intent. If A.C.A. § 7-1-103(3) were applied in this instance, it would have the effect of prohibiting the action described on the part of your campaign, but authorizing it as to the campaign of your opponent. Again, the prohibition in 7-1-103(3) operates only against "public officer[s], deput[ies] or assistant[s]" who are also candidates for office. This restriction makes perfect sense when applied to prohibit incumbent officeholders from misusing, for campaign purposes, any special access they have to public property. It makes no sense when applied to differentiate among candidates seeking access to a publicly-funded press room which is ordinarily available to all candidates, public officers and private citizens alike.
It is therefore my opinion, although there may be many unresolved factual issues, that a court faced with the question would not find a violation of the relevant provision.
In light of my response to your first question, it is unnecessary to answer your remaining questions.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh