Cite as 2022 Ark. App. 467

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-21-523

| | |
|---|---|
| CROWDER LAND COMPANY, LLC; ESTATE OF KENNETH E. PACE; GRAYSON LAND & TIMBER COMPANY, LP; ATWL RESOURCES, LLP; BAVARIAN TIMBER 2015, LLC; TWIN CREEKS TIMBER, LLC; ROYDELL B. OSTEEN; AND KATHERINE BRUILLETTE  APPELLANTS | Opinion Delivered November 16, 2022<br><br>APPEAL FROM THE OUACHITA COUNTY CIRCUIT COURT [NO. 05CV-19-146]<br><br>HONORABLE SPENCER G. SINGLETON, JUDGE |
| V. | |
| CHARLES PAYNE AND EDNA PAYNE  APPELLEES | AFFIRMED IN PART; REVERSED IN PART |

## N. MARK KLAPPENBACH, Judge

Appellants appeal the Ouachita County Circuit Court order granting them a prescriptive easement to traverse two logging roads that run across the lands of appellees, Edna and Charles Payne.[1] All of the properties involved are primarily used for timber investment and recreational hunting. The circuit court's grant of the easement is not at issue

---

[1] The plaintiffs included in the judgment are Crowder Land Company, LLC; Kenneth E. Pace; White Timber Company, LP; Grayson Land & Timber Company, LP Roger Guy Smith; HGH Timber, LLC; ATWL Resources, LLC; Bavarian Timber 2015, LLC; Twin Creeks Timber, LLC; Braxton Tatum, Jr.; Roydell B. Osteen; and Katherine Buillette. The notice of appeal was filed by Crowder Land Company, LLC; Estate of Kenneth E. Pace; Grayson Land & Timber Company, LP; ATWL Resources, LLC; Bavarian Timber 2015, LLC; Twin Creeks Timber, LLC; Roydell B. Osteen; and Katherine Bruillette.

on appeal. Appellants contend that the circuit court clearly erred by (1) permitting appellees the right to install a locked gate across the road easements and (2) restricting entry and use of the road easements by any of appellants' hunting lessees without permission of appellees. We affirm in part and reverse in part.

Appellants own acreage that is landlocked and inaccessible to a public roadway unless traversed by old logging roads—one called the "North Road" and the other called the "South Road."[2] The logging roads were used for years without interruption. In December 2015, the Paynes purchased approximately 110 acres of unimproved timberland in the area. The Paynes improved their property by building a pond, building a shop with living quarters, and providing for utilities including a water well. At some point, the Paynes placed obstructions on the North and South Roads where those roads intersected their property. This led to the lawsuit filed by appellants in 2019 seeking an easement by prescription or, alternatively, by necessity to use both roads.

At trial, the circuit court found that the South Road had been used by appellants or their predecessors dating back to 1969 and that the North Road had been used to access their acreage dating back to 1990. The roads were used over the years to harvest timber, to inspect the various properties, to maintain boundary markings, and to treat the timber. When used to harvest timber, appellants or their agents added gravel to the roads, pulled up

---

[2]Two of the landowners each own forty acres located to the north of the Paynes' land and are landlocked but for the use of the existing "North Road." The remaining landowners collectively own approximately 620 acres of timberland to the south of the Paynes' land; they are landlocked but for the use of the existing "South Road."

2

ditches, cleared obstructions, and traversed the roads with logging equipment and log trucks. The Paynes' predecessors in title did not give permission to use the roads; people simply used the roads. Appellants had also used their land for hunting or leased their property to others for use in hunting. One witness testified about having a hunting lease and acquiring permission to use the roads from the Paynes' predecessors in title, but once the Paynes became the owners, they denied him permission to use the roads.

The circuit court found that appellants had established a prescriptive easement to use the North and South Roads over the Paynes' property. The circuit court noted that the appellants had collectively used the roads for decades in a manner that was open, notorious, and sufficiently adverse to put the Paynes and their predecessors in title on notice of that use. The circuit court permitted a twenty-five-foot-wide roadway for reasonable use and reasonable maintenance of the prescriptive easement. Appellants were required to repair any damage to the roads. The Paynes were permitted to install a locked gate "to prevent public access" to the roads and to install "no trespassing" signs or paint. The court required that any lock be a combination lock with the combination provided to all appellants, their heirs, their assigns, and their contractors.

Appellants were permitted to use the roads for enjoyment of their property, including to visit or inspect their property and to manage or harvest the timber on it. Appellants were permitted to have their contractors use the roads. Appellants and their families were permitted to use the roads for hunting purposes. The circuit court, however, restricted the

use of the roads by any of appellants' hunting lessees, requiring that the hunters first gain the Paynes' permission to use the roads for that purpose.

Appellants paid for a subsequent survey to establish the metes and bounds of the roadway easement, which the circuit court accepted, and the remaining claims were denied, dismissed, or abandoned on appeal. Appellants appealed.[3] The Paynes did not cross-appeal.

No one disputes that the circuit court correctly granted the prescriptive easement. It is the scope of the easement that brings this appeal. Appellants first argue that the circuit court clearly erred in giving the Paynes permission to install locked gates to access the roads. Appellants have not demonstrated reversible error. At the end of the bench trial, in response to the circuit court's question of what appellants wanted the court to do, appellants' attorney said that his clients were "not opposed to a gated road" so long as each appellant "can maintain their own lock" and "can control their own access," expressing concern about the problems that could be presented by using keyed locks. Thus, appellants acknowledged that so long as they would have access to the roads, a locked gate would be a reasonable measure. The circuit court accommodated that concern in the order by permitting the Paynes to install gates with combination locks, provided that the combinations would be shared with appellants, their heirs and assigns, and their contractors. Given the statements that

[3]The Paynes filed a motion to dismiss appellants' appeal before its submission to our court. We denied that motion on February 2, 2022. To the extent that the Paynes reassert those arguments in their appellate brief, we again reject them.

appellants' counsel made directly to the circuit court's query of what the appellants wanted the court to do, we can find no reversible error in this point.[4]

Appellants' second point on appeal concerns the order's prohibition of road use by any of appellants' hunting lessees without obtaining permission from the Paynes. The Paynes very candidly admit that this part of the circuit court's order "is more problematic." This court reviews equity matters de novo on the record but will not reverse a finding of the lower court unless it is clearly erroneous. *Five Forks Hunting Club, LLC v. Nixon Fam. P'ship*, 2019 Ark. App. 371, 584 S.W.3d 685. The hunting-lessee restriction is too burdensome on the prescriptive easement granted to appellants, so we hold that on this provision, the circuit court clearly erred.

Both the creation and extent of an easement by prescription are determined by the adverse use of the property over a long period of time. *Five Forks Hunting Club, LLC*, 2019 Ark. App. 371, 584 S.W.3d 685 (affirming prescriptive easement and circuit court's finding that route and manner of use of the easement could not be altered from the use established by Nixon and its lessees). As the extent of the easement becomes more difficult to discover, the relations between the owner and the possessor of the servient estate become increasingly subject to the governing principle that neither shall unreasonably interfere with the rights of the other. *Jordan v. Guinn*, 253 Ark. 315, 321, 485 S.W.2d 715, 720 (1972). Randy Brown,

---

[4]Also, appellants are responsible for repairing damage to the roads, so preventing public access would protect appellants' interest by lessening the opportunity for unnecessary damage.

one of appellants' hunting lessees, testified that he and "gobs of people" had used the roads for decades to hunt under their hunting leases. Brown had been leasing hunt property for thirty-one years and had always used those roads. Brown recalled that Roy Edmonson, Cypress Creek, and his niece and her husband hunted and used those roads. Generally, the right to use the easement passes with the transfer of a leasehold interest, such as a hunting lease, whether mentioned in the instrument of transfer or not and may not be interfered with by the servient estate. *See Carver v. Jones*, 28 Ark. App. 288, 294, 773 S.W.2d 842, 846 (1989). The right to hunt and fish, technically known as a profit à prendre, or a qualified ownership, in the land for limited purpose of hunting and fishing, is a valuable and well-recognized right and may be transferred between individuals separately from the land itself. *See Nelson v. State*, 318 Ark. 146, 152, 883 S.W.2d 839, 842 (1994). We reverse the circuit court order to the extent that it requires appellants' third-party hunting lessees to obtain permission from the Paynes to use the North Road and the South Road.

Affirmed in part; reversed in part.

GRUBER and BROWN, JJ., agree.

*Harrell & Lindsey, P.A.*, by: *Paul E. Lindsey*, for appellants.

*David P. Price*; and *Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellees.