Daniel Elmer LUM *v.* STATE of Arkansas

CR 84-20                                    665 S.W.2d 265

Supreme Court of Arkansas
Opinion delivered March 5, 1984

*David W. Kirk,* for appellant.

*Steve Clark,* by: *Patricia G. Cherry,* Asst. Atty. Gen., for appellee.

STEELE HAYS, Justice. Appellant Daniel Lum, was charged with the offense of battery in the first degree of Annette Mautz under Ark. Stat. Ann. § 41-1601 (1) (c). He was tried before a jury, found guilty of battery in the second degree and sentenced to six years. Appellant raises three points for reversal, none of which have merit.

There is no dispute as to the facts of the case, and the appellant himself testified, describing the battery and the surrounding circumstances. Appellant had been living with Debbie Hamm for about one year and Annette Mautz, Debbie's younger sister, had persuaded Debbie to move out of Lum's apartment. Later that day, Lum saw Annette in her car with her children and Debbie. Lum described what happened:

> I'm not really disputing any of the facts that have been brought out here today. . . . I come out by the car there, I looked in there and seen Annette. I opened the door and told that she was going to get her ass whupped (sic)

. . . and then I caught her by the hair of the head, pulled her over to the side and hit her three times. I hit her with my balled up fist. . . . I am six foot three inches in height and weigh 200 pounds . . . I was mad and I think I had a right to be mad. I lost control of my temper. Annette didn't have a gun or knife or anything. She didn't threaten me in any way. I hit her three times in the face. All three times were in the same place. I pulled her over by the hair of the head.

The victim's husband saw his wife immediately after the beating and testified that "the right side of her head was swollen from the top of her head down to her neck, terribly, and she had blood coming out of her right eye, coming out of her nostrils, coming out of her mouth and coming out of her right ear." The victim's twelve-year-old daughter was watching as Lum struck her mother and testified that "she had blood coming out her eye and her nose and her mouth and it was over her clothes, the car seat, steering wheel and all in her hair." The victim was hospitalized for five days. Her physician testified in detail to the extent and nature of her injuries. She had suffered fractures in three areas of her face — the area surrounding the right eye socket, the sinus wall and the cheekbone. Holes were drilled in the boney area near the eye socket and nasal passages to allow for the wiring together of the cheekbone area. She had impaired vision for approximately two weeks, two months of pain, six weeks of medical supervision and continues to lack some feeling in the right side of her face.

Appellant's first two arguments address essentially the same issue and we will deal with them together. At the close of the State's case, the appellant moved for a directed verdict on the grounds that there was insufficient evidence of a "serious physical injury" as required by § 41-1601 (1)(c), which reads:

A person commits battery in the first degree if: he causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life.

The motion was denied. Appellant was subsequently found guilty of battery in the second degree under § 41-1602 (1) (a):

> A person commits battery in the second degree if: with the purpose of causing physical injury to another person, he causes serious physical injury to any person.

Appellant argues that there was insufficient evidence to support the jury's finding that appellant caused "serious physical injury."

A directed verdict is given only in cases where no issues of fact exist and the court reviews the evidence in the light most favorable to the appellee. *Burks* v. *State,* 255 Ark. 23, 498 S.W.2d 336 (1973). In determining the sufficiency of the evidence the court must determine whether there is substantial evidence to support the verdict — evidence that is forceful enough to compel a conclusion one way or another beyond suspicion and conjecture. *Jones* v. *State,* 269 Ark. 119, 598 S.W.2d 748 (1980).

Serious physical injury is defined in § 41-115 (19):

> "Serious physical injury" means physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ.

In *Harmon* v. *State,* 260 Ark. 665, 543 S.W.2d 43 (1976) the appellant raised the same argument surrounding the nature of a "serious physical injury." In that case the victim "suffered a broken leg, a fractured toe, bruised heel and pelvis. He was hospitalized for about a month and was in a leg cast and traction for two or three weeks during this time. He was walking with crutches at the time of the trial about a month and a half after the offense." We cited § 41-115 (19) and concluded:

> We cannot say as a matter of law, that a fact question did not exist as to whether the victim's injuries constituted a "protracted impairment of the function

of any bodily member or organ." Webster's Third New International Dictionary defines "protract" as "to continue, prolong, lengthen in time." It was for the jury to resolve the issue as to whether the injuries constituted a temporary or protracted impairment.

We cannot say that under the evidence presented to the jury, and comparing the two cases that the trial court could find that there was no issue of fact, or the evidence insufficient to support a finding of serious physical injury.

Appellant's third assignment of error is that § 41-115 (19) defining "serious physical injury" is vague and overbroad and sets no clear standard for the regulation of conduct resulting in physical injury. Appellant argues that since common understanding and practice applies a different connotation to this phrase than legislative intent, it creates an ambiguity and confusion in application. In *Harmon, supra* the appellant was challenging the requisite elements of § 41-1602 (1)(d) on the same grounds. § 41-1602 (1)(d) provides:

A person commits battery in the second degree if: he recklessly causes serious physical injury to another person by means of a deadly weapon.

We defined the degree of particularity required:

The Constitution has erected procedural safeguards to protect against conviction for crime except for violation of laws which have clearly defined conduct thereafter to be punished; but the Constitution does not require impossible standards. The language here challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. The Constitution requires no more.

See also *Martin* v. *State,* 261 Ark. 80, 547 S.W.2d 81 (1977). We went on to say that "the language of § 41-1602 (1)(d) [which includes 'serious physical injury' as defined by § 41-115 (19)] was of such common understanding and practice that it could not be said that an ordinary individual or juror would

have to speculate as to its meaning." We find that serious physical injury as defined in § 41-115 meets the constitutional standards we have set out. As the state concludes in its brief: "The statute states the extent of harm that the victim must endure in order for the injury to constitute a 'serious physical injury'. It would be unwise and unnecessary to define the phrase in a more precise and inflexible manner as the general language sufficiently describes the requisite extent of harm to the victim." See *State* v. *Weston,* 255 Ark. 567, 501 S.W.2d 622 (1972).

The judgment is affirmed.