Jerry ANDERSON *v.* STATE of Arkansas

CR 92-977                                    852 S.W.2d 309

Supreme Court of Arkansas
Opinion delivered April 26, 1993

*Val P. Price*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal arises out of the second-degree murder conviction of the appellant, Jerry Anderson, for beating a man to death. Anderson was sentenced to fifteen years in prison and fined $5,000. He appeals on insufficient evidence of purpose and causation and further on the trial court's refusal to allow into evidence the fact that he had no felony record. The asserted grounds have no merit, and we affirm.

The beating occurred about midnight on August 21, 1991. Anderson, age 19, Thomas Saunders (the victim), Anderson's brother, and others were at a party at the home of Elloise Huggins in Jonesboro. The participants were drinking malt liquor and rum and playing cards. At one point in the evening, Saunders hit the bottom of a beer bottle from which Anderson was drinking causing Anderson to chip a tooth. A fight ensued.

Anderson described the fight in his first taped statement given to the police which was played to the jury:

> When we got into the fight, I hit Saunders and he fell on the porch and then when he fell, I hit him with a straight blow with my right fist. I do not know where I hit him because it was dark. I knocked him down on the porch. Then I kicked him in the side and he fell off the porch. He got on the ground and I just kicked him in the side a couple more times, and then I stomped his head 2 or 3 times. I kicked him with my right foot. I did not kick with my left foot. I never got down over him and held his head. Nobody else struck any blows.

Anderson stated he kicked Saunders a total of six or seven times. He later testified that Saunders was down trying to protect himself when he kicked him in the ribs and head. Elloise Huggins testified that when she saw Anderson "stomping" Saunders's head, it was so bad that she could not watch. After the fight, Anderson said his brother and Ellis Huggins carried Saunders

over to a ditch where they left him. Anderson added:

> My brother, John, and Ellis Huggins mentioned they thought he was dead. They said he had a pulse and they went back out to check him and they said he did not have any pulse.

No one at the party called the police or sought medical attention for Saunders. Ellis Huggins later denied that he thought Saunders was dead.

Saunders's body was found the next morning after the fight. Officer Jack McCann of the Jonesboro Police Department investigated the death and, as a result, arrested Anderson that same day. He testified that he did not notice bruises on Anderson or other evidence that he had been involved in a fight.

The medical examiner, Dr. Fahmy Malak, testified at trial that Saunders died because of physical trauma to the head and alcohol consumption which caused him to lapse into a coma and cease breathing. He testified that Saunders's alcohol level was .21 percent at the time of death, twice the level required to qualify for legal intoxication, but that this level was not sufficient, in itself, to cause his death. He further testified that Saunders did not die immediately and that he had aspirated blood into his lungs due to cuts to his lips.

At the close of the state's case, Anderson moved for a directed verdict on insufficient evidence due to a lack of intent to kill Saunders and the absence of causative evidence that his blows to the head actually resulted in Saunders's death. He further argued that the trial judge erred in forbidding him to introduce evidence of no arrests or felony record because self-defense was his theory for acquittal. The judge denied the motion.

As part of the defense case, Anderson testified that he was 19 years old and had a reputation for being a law abiding and peaceful citizen. He then testified that he had been drinking malt liquor and got into the fight but did not think the blows he inflicted on Saunders would cause his death. He stated that Saunders swung at him first but agreed that he got in "the first and last lick."

The jury was instructed on second-degree murder, man-

slaughter, and negligent homicide. Instruction No. 10 read as follows:

> Jerry Anderson is charged with the offense of murder in the second degree. To sustain this charge, the State must prove beyond a reasonable doubt that:
>
> Jerry D. Anderson, with the purpose of causing serious physical injury to Thomas Saunders, caused the death of Thomas Saunders.
>
> "Purpose" — A person acts with purpose with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or to cause such a result.
>
> "Serious Physical Injury" means physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ.

Following the guilty verdict for second-degree murder, Anderson requested that the fifteen-year sentence be reduced because he did not have a felony record. The trial judge refused to do that and stated that, though he sustained an objection to any questioning on Anderson's record, the jury knew by the way Anderson testified that he did not have a record.

For his first point, Anderson contends that there was insufficient evidence of purpose and causation to sustain a conviction for second-degree murder. We disagree. The jury was properly instructed on the law of second-degree murder, purpose, and serious physical injury, as well as manslaughter and negligent homicide.

An appeal from a denial of a motion for directed verdict is a challenge to the sufficiency of the evidence, and we review the evidence in the light most favorable to the appellee. *Green v. State*, 310 Ark. 16, 832 S.W.2d 494 (1992); *William v. State*, 298 Ark. 484, 768 S.W.2d 539 (1989). We will sustain the conviction if there is substantial evidence to support it which is evidence of sufficient force and character to compel a conclusion beyond suspicion or conjecture. *Id*; *see also Lukach v. State*, 310

Ark. 38, 834 S.W.2d 642 (1992).

▪ Certainly, repeated blows to the head by kicking or "stomping" when the man was down exhibited purposeful action to inflict serious physical injury whether it be risk of death or protracted disfigurement or impairment. *See* Ark. Code Ann. §§ 5-10-103 (Supp. 1991), 5-1-102(19) (1987), and 5-2-202(1) (1987). This was a question of fact properly left to the jury to resolve, and we hold that substantial evidence exists to support the conviction for second-degree murder. *See Tarentino* v. *State*, 302 Ark. 55, 786 S.W.2d 584 (1990).

▪ In addition, though the jury was not specifically instructed on causation, our statute reads:

> Causation may be found where the result would not have occurred but for the conduct of the defendant operating either alone or concurrently with another cause unless the concurrent cause was clearly sufficient to produce the result and the conduct of the defendant clearly insufficient.

Ark. Code Ann. § 5-2-205 (1987). Dr. Malak's testimony that death would not have occurred but for the trauma and that the alcohol consumption alone was not the cause of death satisfies the statutory requirement. The evidence was substantial that the blows to the head were a contributing cause of death. *See Porter* v. *State*, 308 Ark. 137, 823 S.W.2d 846 (1992).

Nor do we give credence to Anderson's second point. He argues that the trial judge erred in refusing testimony from Anderson or any other witness on Anderson's lack of a prior felony arrest or conviction. The trial judge ruled that such testimony was not relevant evidence in support of a self-defense theory. We agree. The absence of a felony record is not evidence of peacefulness anymore than the mere existence of a felony record, by itself, is evidence of a violent temperament. To be sure, conviction for certain past crimes may be evidence of a certain plan, motive, scheme and the like under Ark. R. Evid. 404(b). But the mere absence of any felony conviction is not relevant to the question of who precipitated a fight. Moreover, the evidence in this case went far beyond who threw the first punch and centered appropriately on the purpose behind the subsequent beating and

the result.

Lastly, we note, as the trial judge emphasized, that Anderson was permitted to testify that he had a reputation for being a law abiding and peaceful citizen. *See* Ark. R. Evid. 405(a). This statement was not countered by the state. From this, the jury could easily have garnered Anderson's point that he had no felony record.

In sum, the acceptance or rejection of evidence relating to the absence of Anderson's felony record is a matter left to the discretion of the trial judge. *Dixon* v. *State*, 311 Ark. 613, 846 S.W.2d 170 (1993). There was no abuse of that discretion.

Affirmed.