Thomas Scott PUCKETT *v.* STATE of Arkansas

CR 96-907                                944 S.W.2d 111

Supreme Court of Arkansas
Opinion delivered May 5, 1997
[Petition for rehearing denied June 9, 1997.]

356

*McDaniel & Wells, P.A.*, by: *Bill Stanley*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Thomas Puckett was charged under Ark. Code Ann. § 5-54-105 (Repl. 1993), with the Class B felony of hindering the apprehension or prosecution of Calvin Adams about four months after Adams's arrest for the capital murder of Richie Austin and attempted murder of his wife, Cassandra Austin. Following a jury trial, Puckett was found guilty and sentenced to seven years in prison and fined $10,000.00. Puckett appeals, arguing that the trial court erred in its interpretation and application of § 5-54-105, and its failure to grant Puckett's motion for directed verdict. He also seeks reversal of the court's ruling that allowed the State the use of a letter in cross

examining defense witness, Zenia Adams, Calvin's wife and Puckett's cousin. We affirm.

Puckett first submits that, if the trial court had strictly construed § 5-54-105, as required, it would necessarily have found the State's evidence insufficient to show he had the purpose and intent to hinder the apprehension or prosecution of Adams. At most, Puckett argues his actions were chargeable under Ark. Code Ann. § 5-53-111 (Repl. 1993), the offense of tampering with physical evidence, which is a Class D felony. These statutes in relevant part are set out in juxtaposition as follows:

5-54-105. Hindering apprehension or prosecution.

5-54-105(a)   A person commits an offense under this section if, *with purpose to hinder* the apprehension, *prosecution, conviction, or punishment of another for an offense, he*:

5-54-105(a)(1)   Harbors or conceals the person; or

5-54-105(a)(2)   Provides or aids in providing the person with a weapon, money, transportation, disguise, or other means of avoiding apprehension, discovery, or effecting escape; or

5-54-105(a)(3)   Prevents or obstructs anyone from performing an act which might aid in the discovery, apprehension, or identification of the person by means of force, intimidation, or the threat of such, or by means of deception; or

5-54-105(a)(4)   *Conceals, alters, destroys, or otherwise suppresses the discovery of any fact, information, or other thing related to the crime which might aid in the discovery, apprehension, or identification of the person*; or

5-54-105(a)(5)   Warns the person of impending discovery, apprehension, or identification; or

5-54-105(a)(6)   Volunteers false information to a law enforcement officer. (Emphasis added.)

5-53-111. Tampering with physical evidence.

5-53-111(a)   A person commits the offense of tampering with physical evidence if he alters, destroys, suppresses, removes, or conceals any record, document, or thing with the purpose of impairing its verity, legibility, or availability in any official proceeding or investigation.

Puckett's argument is simple and primarily focuses on § 5-54-105(a)(4) — the only provision of the statute which arguably could be applicable. In short, he claims that provision (a)(4) required the State to show that he had acted to suppress evidence which would have aided in the apprehension or identification of the person (Calvin Adams) who committed the Austin crimes. While he concedes he found and hid the suspected murder weapon used by Calvin Adams to commit the crimes, he submits his actions took place *after* Calvin had already been apprehended, identified, and had confessed to the crimes. Consequently, he contends the language in provision (a)(4) precludes its applicability to the facts in this case. We disagree.

While the law is well settled that penal statutes must be strictly construed resolving any doubts in favor of the accused, *Nelson v. State*, 318 Ark. 146, 883 S.W.2d 839 (1994), it is equally established that such statutes must not be so strictly construed as to defeat an obvious intent of the legislature. *Id.* Here, Puckett suggests we place an interpretation on § 5-54-105(a)(4) that would limit its applicability only to a person's acts of hindering that transpire before a criminal suspect has been identified and arrested, but not afterwards. Provision (a)(4)'s plain language precludes such a construction. In reading provision (a), a person commits the offense of hindering the apprehension or prosecution when he does so with the purpose to hinder the apprehension, *prosecution, conviction, or punishment of another for an offense.* (Our emphasis.) Thus, in reading the full text of provision (a)(4), Puckett can be said to have committed the crime of hindering if the State showed that, with purpose, he hindered the prosecution, conviction, or punishment of Calvin Adams by suppressing evidence that might have aided the State in identifying Calvin Adams as having committed the Austin crimes. And while Puckett suggests the identification referred to in (a)(4) does not include the actual prosecution or in-court identification of Calvin Adams, such a suggestion runs counter to the clear wording employed in that provision. In addition, the General Assembly in enacting § 5-54-105(a)(4) utilized no qualifying or limiting words when employing the language "identification of the person."

In turning to the evidence, we conclude the evidence was more than sufficient from which a jury could infer Puckett destroyed the fingerprints on the weapon, hid the gun from the authorities, and did not tell the authorities of the gun's whereabouts until confronted by the investigating officers. Although Puckett claims he voluntarily led authorities to the weapon Calvin used in the crimes, substantial evidence was presented by the State that permitted the jury to infer and believe otherwise.

■ On the night of April 15, 1994, Richie and Cassandra Austin were kidnapped from their home and taken to a rural area where Richie was fatally wounded and Cassandra was shot several times, twice in the head and once in the shoulder. Cassandra survived, walked to where she found help, and subsequently gave investigating officers a sufficient description which allowed them to arrest Calvin Adams at about 6:00 a.m. on April 16, 1994. That morning, Puckett learned of the crimes and of his friend's, Calvin Adams, arrest. The proof shows Puckett went to Calvin and Zenia Adamses' house several times and discussed the matter with Zenia. During this period of time, Puckett learned the police had been to the Adams home twice searching for the murder weapon. Puckett said that the officers' search prompted him, Zenia, and Dianah Rowan (another cousin of Puckett's) to initiate their own separate search of the house with the avowed purpose to show Calvin's innocence. Puckett found the gun at about 11:00 a.m., the same morning, but did not tell anyone. Instead, he hid it in his pants and left the house. Puckett testified he went to the police station, but by his own admission, never told any officer he had found the gun. Rather, Puckett went to his house, wrapped the gun in a blanket, and placed it in a closet. He never revealed to anyone that he had located the weapon until after Zenia and Dianah told officers that Puckett must have found the gun, and the officers confronted Puckett concerning the gun's whereabouts. When asked where the gun was, Puckett's initial response was, "What's Calvin say?" After the officers told Puckett that Adams had confessed to the crimes and to where the weapon was located, Puckett admitted that he had the murder weapon, and took officers to his residence to retrieve it. Puckett conceded he had obliterated any fingerprints on the weapon. From the foregoing

proof, and under our interpretation of § 5-54-105(a)(4), we have no difficulty in concluding § 5-54-105 applies to Puckett's case and that substantial evidence was introduced, showing Puckett had violated it by attempting to conceal or otherwise suppress the discovery of the murder weapon.

■■ Puckett also argues that the hindering and tampering statutes, § 5-54-105 and § 5-53-111, originate from the same Act 280 of 1975, and that fact, alone, reflects the General Assembly did not intend for the removal and alteration of physical evidence to be covered by both statutory provisions. He cites no legal authority to support his argument, and our law runs counter to such a notion. While both § 5-54-105(a)(4) and § 5-53-111 deal with the wrongful manipulation of physical evidence by a third party, this court has held that as long as there is no impermissible uncertainty in the definitions of the offenses, the mere existence of any overlapping does not render a statute constitutionally infirm. *Dansby v. State*, 319 Ark. 506, 839 S.W.2d 331 (1995). This court also held that, where a defendant is chargeable under either of two statutes with identical elements, the fact that the prosecutor may be influenced by the penalties available upon conviction, standing alone, is not constitutionally suspect. *Simpson v. State*, 310 Ark. 493, 837 S.W.2d 475 (1992).

Puckett's final argument challenges the trial court's ruling allowing the State to cross examine Zenia Adams regarding a letter she had sent Puckett on October 1, 1994, or about five months after the Austins were shot and after Puckett was arrested and incarcerated on the hindering charge. At trial, defense counsel had cross examined officers concerning why they delayed four months before arresting Puckett on the hindering charge when the police had nothing more in the way of evidence than they had at the time Adams committed his crimes. To explain the delay, the State sought to show Zenia had reignited the officers' investigation because in September 1994, she told police a second unnamed person was involved in the shooting of the Austins, and she had sent a letter dated October 1, 1994, to Puckett wherein she wrote, "I love you. I know who you are protecting." The trial court overruled Puckett's objection to the State's proposed inquiry into the contents of Zenia's letter, stating the following:

The Court does want the record to be clear that if the defense had not made an issue out of the fact that the police or prosecutors waited four or five months to file the charges [sic, charge], the Court would not have allowed this evidence in, but almost every police witness the defense has asked questions related to the delay. . . . [T]he Court thinks it is only fair that the jury knows the basis for the actions the police took.

In sum, the trial court ruled that while the State could not introduce Zenia's letter into evidence, the defense had opened the door for the State to utilize it in the cross examination of Zenia to explain how Zenia had provided added information concerning the Austin crimes, which had prompted the officers to continue their investigation regarding those crimes. We are unable to say the trial court abused its discretion in allowing the State's inquiry in these circumstances. *See Hicks v. State*, 327 Ark. 652, 941 S.W.2d 387 (1997).

For the reasons above, we affirm.