James I. JOHNSON *v.* STATE of Arkansas

CR 98-1250 987 S.W.2d 694

Supreme Court of Arkansas
Opinion delivered April 8, 1999

[Petition for rehearing denied May 13, 1999.]

*Dunham & Faught P.A.*, by: *James Dunham*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

A NNABELLE CLINTON IMBER, Justice. This case involves a conviction for DWI, third offense. Mr. James I. Johnson was convicted in municipal court of DWI third offense and appealed that conviction to the Cleburne County Circuit Court. After the trial court concluded that there was no speedy-trial violation, Mr. Johnson waived his right to a jury trial and a bench trial ensued. The trial court denied Mr. Johnson's request to certify a witness as an expert and denied his motion for dismissal based upon the insufficiency of the evidence. At the conclusion of the trial, the trial court personally inspected the location of the arrest. The trial court then convicted Mr. Johnson of DWI, third offense. On appeal to the Arkansas Court of Appeals, Mr. Johnson asserted that his right to a speedy jury trial had been denied; that there was insufficient evidence to convict; that the trial court

erred in refusing to certify his witness as an expert; and that the trial court failed to properly record the visit to the location of arrest. The Court of Appeals affirmed the conviction, and we accepted review. *See Johnson v. Arkansas,* Op. No. CACR 97-564 (September 23, 1998).

On September 1, 1995, Mr. Johnson was arrested for driving while intoxicated. He was charged with DWI, third offense, and refusal to take a Breathalyzer test. Upon motion by counsel, these charges were tried separately. Mr. Johnson was found guilty in the Heber Springs Municipal Court of DWI, third offense, on January 23, 1996, and appealed that conviction to the Cleburne County Circuit Court.

The circuit court trial was originally scheduled to take place on April 29, 1996, seven months after Mr. Johnson's initial arrest. However, two continuances were granted at Mr. Johnson's request, with a *de novo* trial finally taking place on September 13, 1996, one year and twelve days from the date of the Mr. Johnson's arrest. At the trial, Mr. Johnson moved to dismiss for violation of his right to a speedy trial, which motion was denied by the trial court. Mr. Johnson then waived his right to a jury trial, and the court went forward with a bench trial on the DWI charge.

Arkansas State Trooper Dudley Lemon testified that he observed Mr. Johnson driving erratically and left of the center line, and proceeded to pull him over. When Mr. Johnson exited his truck, Trooper Lemon smelled the odor of alcohol about Mr. Johnson's person and noticed that his eyes were "quite" blood-shot. He also noticed that Mr. Johnson was unable to support himself or stand upright without leaning against the truck and that his speech was very slow and deliberate, as though he was trying to prevent slurring. According to Trooper Lemon, Mr. Johnson attempted to stand at one point, but fell back to his left. Trooper Lemon demonstrated the one-leg-stand field-sobriety test and then asked Mr. Johnson if he would have any problems perform-ing the test. Mr. Johnson responded by saying, "Dudley, don't do this to me." Trooper Lemon proceeded to arrest Mr. Johnson for DWI because Mr. Johnson "had ingested enough alcohol that it had affected his driving abilities, his judgment, to such an extent

that he very well could cause injury to himself or other persons." Trooper Lemon reviewed his credentials as a certified law enforcement officer, including twenty-two years with the Arkansas State Police and at least 200 to 300 DWI arrests. Trooper Lemon also testified that Mr. Johnson was offered two more opportunities to perform a field-sobriety test at the Cleburne County Detention Center, but his only response was to request an attorney.

Mr. Johnson's testimony contradicted that of Trooper Lemon on several points. Mr. Johnson asserted that he had not consumed any alcohol at the time of his arrest. He further testified that Trooper Lemon offered him only one opportunity to take a field sobriety test and that the offer occurred after he was arrested. Finally, in explanation of his statement "Dudley, don't do this to me," Mr. Johnson stated that he was in a hurry to get to the golf course he managed, where a golf tournament was scheduled that evening.

During the trial, Mr. Johnson sought to have Mr. Joe Jones testify as an expert in the areas of DWI arrest procedures and law enforcement ethics. Mr. Jones admitted on cross-examination that he had arrested less than half-a-dozen DWI suspects in his entire career, and that his certification as a law enforcement officer lapsed eight to ten years earlier. He also admitted that he had not received any specialized training in DWI arrest procedures or law enforcement ethics in over twenty years. Upon inquiry by the trial court, Mr. Jones conceded that he had never been qualified as an expert witness in any court. The trial court denied Mr. Johnson's request to qualify Mr. Jones as an expert witness.

At the close of evidence, the trial judge announced that he wished to visit the site of the arrest. Mr. Johnson's attorney objected to any officer accompanying the judge to the site, but otherwise both parties did not object to the visit. The trial judge invited both attorneys to follow him to the site, but both declined the offer. The record reflects that the trial judge recessed court for twenty minutes while he drove alone to the location of the arrest. Upon returning, the trial judge recited into the record where he had gone and the route he took.

The trial court found Mr. Johnson guilty of DWI, third offense, and judgment was entered on December 2, 1996. The Court of Appeals affirmed the conviction, *see Johnson v. State, supra,* concluding that the testimony of Trooper Lemon and the failure to submit to testing was enough evidence to uphold the conviction. The Court of Appeals further concluded that the trial court did not err in refusing to allow expert testimony by Mr. Jones, and that Mr. Johnson failed to preserve the argument concerning a verbatim record and his constitutional challenge. We accepted review and affirm.

## I. Sufficiency of the Evidence

■ Mr. Johnson argues that there was insufficient evidence of intoxication to support a conviction for DWI. Specifically, he asserts that the only evidence of intoxication was the testimony by Trooper Lemon and the jailer at the Cleburne County Detention Center that Mr. Johnson "had an odor of alcohol about him." Where there is a challenge to the sufficiency of the evidence, we must review that point prior to considering any other alleged trial errors. *Harris v. State,* 284 Ark. 247, 681 S.W.2d 334 (1984).

■ The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Thomas v. State,* 312 Ark. 158, 847 S.W.2d 695 (1993). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Lukach v. State,* 310 Ark. 119, 835 S.W.2d 852 (1992). In determining the sufficiency of the evidence, we review the evidence in the light most favorable to the State, or the appellee, and consider only that evidence tending to support the verdict. *Brown v. State,* 309 Ark. 503, 832 S.W.2d 477 (1992).

Arkansas Code Annotated section 6-65-103 (Repl. 1997) provides:

> (a) It is unlawful and punishable as provided in this act for any person who is too intoxicated to operate or be in actual physical control of a motor vehicle.

"Intoxicated" is defined by Ark. Code Ann. § 5-65-102(1) (Repl. 1997), which states:

> (1) "Intoxicated" means influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination thereof, to such a degree that the driver's reactions, motor skills, and judgment are substantially altered and the driver, therefore, constitutes a clear and substantial danger of physical injury or death to himself and other motorists or pedestrians[.]

■ The observations of police officers with regard to the smell of alcohol and actions consistent with intoxication can constitute competent evidence to support a DWI charge. *State v. Johnson*, 326 Ark. 189, 931 S.W.2d 760 (1996); *Gavin v. State*, 309 Ark. 158, 827 S.W.2d 161 (1992). Opinion testimony regarding intoxication is admissible. *Johnson, supra; Long v. State*, 284 Ark. 21, 680 S.W.2d 686 (1984).

■ Viewing the evidence in the light most favorable to the State, the evidence was sufficient to support the trial court's finding that Mr. Johnson was intoxicated. Trooper Lemon testified that Mr. Johnson was driving erratically and left of center and smelled of alcohol. He further testified that Mr. Johnson was unable to stand upright without support, was unsteady on his feet, and had bloodshot eyes. The evidence also established that Mr. Johnson refused to submit to breath or field-sobriety tests. The refusal to be tested is admissible evidence on the issue of intoxication and may indicate the defendant's fear of the results of the test and the consciousness of guilt. *Medlock v. State*, 332 Ark. 106, 964 S.W.2d 196 (1998). Finally, Mr. Johnson's statement "Dudley, don't do this to me," could be construed as inculpatory. While Mr. Johnson argues that his testimony refuted Trooper Lemon's testimony regarding intoxication, it is well settled that it is the province of the fact-finder to determine the weight of evidence and the credibility of witnesses. *Johnson, supra; Jones v. State*, 305 Ark. 95, 805 S.W.2d 642 (1991). We therefore defer to the trial court's ascertainment of the credibility of witnesses and affirm on this point.

## II. Speedy-Trial Rights

■ ■ Mr. Johnson next argues that he was denied his right to a speedy jury trial because he did not receive an opportunity for a jury trial until more than one year after he was arrested. We first note that his argument with regard to a jury trial is not preserved as he waived the right to a jury trial. Where a defendant acknowledges his right to a jury, and the defendant's attorney subsequently waives that right in open court on the record and in the defendant's presence, with a specific request that the judge hear the case, a valid waiver is accomplished. *See* Ark. R. Crim. P. 31.2; *Bolt v. State*, 314 Ark. 387, 862 S.W.2d 841 (1993); *Calnan v. State*, 310 Ark. 744, 841 S.W.2d 593 (1992). The record establishes that Mr. Johnson was present when the waiver was made, and was aware of his right to a jury trial at the time the waiver was made. Thus, he waived his right to a jury trial.

■ ■ Even if Mr. Johnson had not waived his right to a trial by jury, we have made it clear that there is no entitlement to a jury trial in municipal court. Ark. Code Ann. § 16-17-703 (Repl. 1994); *State v. Roberts*, 321 Ark. 31, 900 S.W.2d 175 (1995); *see also Ludwig v. Massachusetts*, 427 U.S. 618 (1976). Thus, Mr. Johnson was not entitled to a jury trial in municipal court.

Finally, Mr. Johnson asserts that the speedy trial clock should begin running on the date of the arrest, rather than on the date the appeal was perfected to circuit court. However, we have held that when an appeal is taken from a municipal court decision to the circuit court, the time for speedy trial begins to run from the day the appeal is filed in circuit court. *McBride v. State*, 297 Ark. 410, 762 S.W.2d 785 (1989). Mr. Johnson's trial clearly occurred within one year of the perfection of his appeal to the circuit court. In any event, 137 days would be assessed against Mr. Johnson as a result of two continuances granted at his request. *See* Ark. R. Cr. P. 28.3. If the speedy-trial clock were to start ticking on the date of the arrest, it is clear that the trial occurred within one year for purposes of Rule 28.1(c). We conclude that Mr. Johnson's right to a speedy trial was not violated.

### III. Expert Witness Testimony

 In his next argument Mr. Johnson contends that the trial court erred by refusing to rule that Mr. Joe Jones was qualified to testify as an expert witness. The qualification of an expert witness is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Stout v. State*, 320 Ark. 552, 898 S.W.2d 457 (1995); *Dillon v. State*, 317 Ark. 384, 877 S.W.2d 915 (1994). If there is some reasonable basis to find that the witness has knowledge of a subject beyond that of ordinary knowledge then the witness may be qualified as an expert. *Stout, supra*; *Poyner v. State*, 288 Ark. 402, 705 S.W.2d 882 (1986). The general test of admissibility of expert testimony is whether it will assist the trier of fact in understanding the evidence or determining a fact in issue or, stated differently, whether the trier of fact can receive "appreciable help" from such testimony. *Stout, supra; Utley v. State*, 308 Ark. 622, 826 S.W.2d 268 (1992).

 Mr. Johnson proffered Mr. Joe Jones as an expert witness in the areas of DWI arrest procedures and law enforcement ethics. However, Mr. Jones had not received training in the areas of DWI arrest procedures or law enforcement ethics in over twenty years, and had not been certified as a law enforcement officer for up to ten years. Hence, the trial court could have concluded that he would not receive "appreciable help" from Mr. Jones's testimony.

Mr. Johnson suggests that *Thomas v. Sessions*, 307 Ark. 203, 818 S.W.2d 940 (1991), supports his argument that it was error for the trial court to refuse to certify Mr. Jones as an expert. In *Sessions*, the doctor tendered as an expert had over twenty years experience as a medical practitioner, but had not practiced emergency room medicine in ten years. *Id.* Because the issues about which the doctor was to testify were "basic to the science of medicine," as distinguished from specialized emergency room practice, we concluded that it was error for the trial court to exclude his testimony. *Id.* In this case, however, Mr. Johnson sought to elicit expert testimony from Mr. Jones about certain

specific areas of law enforcement: DWI arrest procedures and law enforcement ethics. Mr. Jones admitted that he had received no training in these areas for a considerable amount of time. *Sessions* is thus inapposite, and we hold that the trial court did not abuse its discretion in refusing to qualify Mr. Jones as an expert witness.

### *IV. Verbatim Record Requirement*

■ For his final point on appeal, Mr. Johnson asserts that the trial court committed reversible error by failing to make a verbatim record of his visit to the location of the arrest. We hold that an appropriate record was made, and affirm on this point as well.

Our Administrative Order No. 4 provides:

> Unless waived on the record by the parties, it shall be the duty of any circuit, chancery, or probate court to require that a verbatim record be made of all proceedings pertaining to any contested matter before it.

*See also* Ark. Code Ann. § 16-13-510 (Repl. 1994). It is clear that personal inspections of property are permissible and proper as an aid to a better understanding by the fact-finder of what witnesses had testified to, so long as the judge notifies the parties prior to the inspection and limits the inspection to that purpose. *See Potter v. Bryant Funeral Home,* 307 Ark. 142, 817 S.W.2d 882 (1991); *Mitcham v. Temple,* 215 Ark. 850, 223 S.W.2d 817 (1949); *Clark v. Clark,* 4 Ark. App. 153, 632 S.W.2d 432 (1982). We have also held that a judge's personal observations of the site are not considered evidence of facts. *See Potter, supra; Mitcham, supra.* Hence, such observations by the fact-finder should not be included in the record.

■ The record here reflects that the trial judge informed the parties of his intention to visit the location of the arrest. Neither party objected to the viewing, although defense counsel objected to any officer accompanying the judge to the location. Both attorneys were invited to follow the judge to the site, but both declined the offer. The judge drove to the arrest site alone and, upon returning to the courtroom, made a record of where he

went and the route taken. Neither party objected to the manner in which the trial court made a record of the viewing. Pursuant to our holdings in *Potter, supra,* and *Mitcham, supra,* we conclude that the trial court's record of his visit to the arrest site complied with Administrative Order No. 4 and Ark. Code Ann. § 16-13-510.

Affirmed.