Trent HARMON *v.* STATE of Arkansas

CR 98-1354                                    8 S.W.3d 472

Supreme Court of Arkansas
Opinion delivered January 6, 2000
[Petition for rehearing denied February 10, 2000. * ]

---

* CORBIN, J., not participating.

*Bowden & Kendel,* by: *David O. Bowden; William H. Craig;* and *David R. Cannon,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Michael C. Angel,* Ass't Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. Appellant Trent Harmon, Jr., appeals the judgment of the Pulaski County Circuit Court convicting him of battery in the first degree and sentencing him to ten years' imprisonment. This case was certified to us from the Arkansas Court of Appeals because it presents issues involving constitutional interpretation. Our jurisdiction is thus pursuant to Ark. Sup. Ct. R. 1–2(a)(1) and (b)(3). Mr. Harmon raises five points for reversal. We find no error and affirm.

## I. Sufficiency of the Evidence

For his first point for reversal, Mr. Harmon argues that there was insufficient evidence to support a conviction of battery in the first degree. Particularly, he asserts that the evidence was insufficient to demonstrate (1) that he had any involvement in the crime; (2) that he caused a serious physical injury; or (3) that he acted with the requisite mental state. Mr. Harmon was charged with violating Ark. Code Ann. § 5-13-201(3)(Repl. 1997), which provides that a person commits battery in the first degree if: "He causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life[.]"

The test for determining sufficient proof is whether there is substantial evidence, direct or circumstantial, to support the verdict. *Johnson v. State,* 337 Ark. 196, 987 S.W.2d 694 (1999). On appeal, we review the evidence in the light most favorable to the State and sustain the conviction if there is any substantial evidence to support it. *Tigue v. State,* 319 Ark. 147, 889 S.W.2d 760 (1994). Evidence is substantial if it is forceful enough to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Id.* In determining whether there is substantial evidence, we consider only that evidence tending to support the verdict. *Johnson, supra.* We do not weigh the evidence presented at trial, as that is a matter for the factfinder. *Freeman v. State,* 331 Ark. 130, 959 S.W.2d 400 (1998); *Dabney v. State,* 326 Ark. 382, 930 S.W.2d 360 (1997). Where, as here, the trial is before the bench, the trial judge sits as factfinder. *See Gray v. State,* 311 Ark. 209, 843 S.W.2d 315 (1992); *State v. Watson,* 307 Ark. 333, 820 S.W.2d 59 (1991).

The evidence showed that on October 27, 1996, Kevin Anglin was beaten by several individuals in the parking lot of the Discovery Club in Little Rock. Mr. Anglin testified that he had no actual memory of the beating, but that the last thing he remembered seeing were the faces of Mr. Harmon and Mr. Benjamin Brown. At trial, Mr. Anglin identified Mr. Harmon for the record. Mr. Anglin testified that as a result of the beating he suffered "very, very acute" injuries and was placed in the intensive care unit for three days. Mr. Anglin testified that he suffered injuries to the left side of his face, for which he underwent plastic surgery to repair. Mr. Anglin stated further that since the beating, he suffered a loss of his senses of taste and smell and a loss of memory. Finally, Mr. Anglin indicated that

as of the time of trial some sixteen months after the incident, he had no sense of taste or smell and that he continued to suffer a loss of memory.

Mr. Ali Kaan Aydulun testified that he witnessed Mr. Anglin being beaten that night at the Discovery Club. He stated that he and his friend were walking in the parking lot when they encountered Mr. Brown, standing in the lot cussing. Mr. Aydulun and his friend were about to say something to Mr. Brown, when Mr. Anglin advised them to leave Mr. Brown alone because he was drunk. Mr. Aydulun stated that he and his friend began to walk away, and that when he turned around, he saw Mr. Brown and several other persons attack Mr. Anglin. Mr. Aydulun stated that Mr. Anglin had done nothing to provoke the fight. According to Mr. Aydulun, six or seven assailants punched and pushed on Mr. Anglin and eventually pulled him to the ground and started kicking him in the ribs, legs, face and the back of the head. Mr. Aydulun made an in-court identification of Mr. Harmon as one of the assailants. He had previously identified Mr. Harmon in a photo-lineup. Mr. Aydulun testified that Mr. Harmon kicked Mr. Anglin in the face. He explained that Mr. Harmon's foot missed Mr. Anglin the first time, but that on the second attempt Mr. Harmon backed up one step and ran at Mr. Anglin's head like a field-goal kicker runs toward a football.

Mr. James Patrick Cady also witnessed the attack. He testified that five or six people began hitting and kicking Mr. Anglin and then stomping on his head as he lay on the ground. Mr. Cady selected Mr. Harmon's photograph out of a photo-lineup as looking like one of the assailants. He stated that when the fight ended and the assailants dispersed, one assailant gave several last kicks to the victim's head before getting into a car and leaving. He identified Mr. Harmon as looking like the person who inflicted those last blows to the victim's head. Mr. Cady told police that the assailant had driven away in a White Honda, license plate number YTS 020. Within approximately fifteen minutes of the incident being reported to the police, a Little Rock police officer stopped a White Honda, license plate number YGS 020, on Cantrell Road, not far from the Discovery Club. Mr. Harmon was driving the car, and Mr. Brown was the only passenger.

The State also offered the testimony of Dr. Ali Krisht, which was taken during the previous trial against Mr. Brown. Dr. Krisht, an expert in neurosurgery, testified that he treated Mr. Anglin in the hospital in October 1996. He stated that a CAT scan of Mr. Anglin's head revealed contusions on the brain surface in more than one area, mostly on the left side. He explained that contusions are small hemorrhages that are usually caused by trauma. He stated that Mr. Anglin was diagnosed with "traumatic brain injury." Dr. Krisht also stated that a loss of short-term memory, taste and smell can be associated with such an injury, and that those losses can be permanent. Dr. Krisht further noted that during a subsequent visit to the clinic, Mr. Anglin complained that he was having problems with short-term memory and his sense of smell. Viewing this evidence in the light most favorable to the State, we find substantial evidence to support Mr. Harmon's conviction of battery in the first degree.

Mr. Harmon's first argument in opposition to this conclusion is an attack on the credibility of two of the State's witnesses: Mr. Aydulun, who identified Mr. Harmon as one of the assailants who kicked the victim in the head; and Mr. Cady, who reported that a person who looked like Mr. Harmon inflicted the last blows to the victim's head and drove away in a car that was eventually stopped by the police. The attack on the credibility of these witnesses is premised on certain inconsistencies in their testimony. The defense specifically points out that Mr. Aydulun indicated that some of the assailants, including Mr. Harmon, were wearing baseball caps and cowboy boots, and that a group of them left the scene in a blue Mazda. Whereas, Mr. Cady indicated that Mr. Harmon left the scene in a white Honda and the police officer testified that when he stopped the white Honda, he did not notice Mr. Harmon wearing a baseball cap or cowboy boots and he did not notice any blood on him. Finally, the defense also challenges the credibility of the witnesses by noting that some of the people identified during the investigation as possible "look-alikes" were merely fillers in the photo-lineup and were not actually involved in the assault.

The matters emphasized by Mr. Harmon bear exclusively upon the credibility of the State's witnesses. This court, however, does not attempt to weigh the evidence or assess the credibility of witnesses. That lies within the province of the trier of fact. *Williams v. State*, 338 Ark. 178, 992 S.W.2d 89 (1999). We are bound by the fact-finder's determination on the credibility of wit-

nesses. *Kitchen v. State*, 271 Ark. 1, 607 S.W.2d 345 (1980); *Thomas v. State*; 266 Ark. 162, 583 S.W.2d 32 (1979). Likewise, we have long held that the trier of fact is free to believe all or part of a witness's testimony. *Freeman v. State*, 331 Ark. 130, 959 S.W.2d 400 (1998); *Patterson v. State*, 326 Ark. 1004, 935 S.W.2d 266 (1996). Moreover, inconsistent testimony does not render proof insufficient as a matter of law, and one eyewitness's testimony is sufficient to sustain a conviction. *See Williams v. State, supra; Rawls v. State*, 327 Ark. 34, 937 S.W.2d 637 (1997).

Mr. Harmon contends that the purported inconsistencies in the testimony of the State's witnesses make their identification of him as the perpetrator of the crime "inherently improbable, physically impossible, and so clearly unbelievable that reasonable minds could not differ thereon." *Kitchen v. State, supra*. We disagree. We cannot say with assurance that it would have been physically impossible for Mr. Harmon to discard incriminating evidence, such as clothing, between the time he fled the scene and the time the officer stopped the vehicle he was driving. Furthermore, the officer admitted that he was not specifically looking for blood, cowboy boots, or baseball caps when he made the DWI arrest.

The defense fully explored all inconsistencies and weaknesses in its cross-examination of the State's witnesses. Nevertheless, the trial judge found their identification credible. The accuracy of the eyewitness identifications and any alleged weaknesses were matters of credibility for the trial court to resolve. *Davis v. State*, 284 Ark. 557, 683 S.W.2d 926 (1985). Mr. Harmon has presented us with no valid reason to disregard the trial judge's assessment of the witnesses's credibility. We therefore hold that substantial evidence linking Mr. Harmon to the crime does exist.

Mr. Harmon next asserts that the State's evidence was insufficient to establish that he caused a serious physical injury. Ark. Code Ann. § 5-1-102(19) (Repl. 1997) defines "serious physical injury" as: "Physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ."

Mr. Anglin testified that as a result of the injuries sustained in the fight, he spent three days in the hospital's intensive care unit. He

also stated that he suffered a loss of his senses of taste and smell, and a loss of memory as a result of the beating. At trial, some sixteen months after the incident, Mr. Anglin indicated that these symptoms continued to persist. During Mr. Anglin's hospitalization in October 1996, Dr. Krisht diagnosed Mr. Anglin with "traumatic brain injury." Dr. Krisht also confirmed that the protracted loss of memory, taste, and smell experienced by Mr. Anglin can be associated with the type of injury he sustained. A photograph showing the severity of the injuries to the left side of Mr. Anglin's face was also introduced into evidence, and Mr. Anglin testified that he underwent plastic surgery to repair those injuries.

■ Whether a victim has sustained a serious physical injury is an issue for the jury, or, as in this case, the trial judge sitting as factfinder. *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999); *Weaver v. State*, 324 Ark. 290, 920 S.W.2d 491 (1996). Likewise, the question whether injuries constitute a temporary or protracted impairment of a function of a bodily member or organ is for the factfinder to decide. *Purifoy v. State*, 307 Ark. 482, 822 S.W.2d 374 (1991).

■ In this case, the victim's testimony about the injuries he sustained on October 27, 1996, was corroborated by his doctor's testimony as well as a photograph of his face after the beating. We cannot say that the factfinder could not reasonably infer from this evidence that Mr. Anglin sustained a serious physical injury as a result of the beating, and particularly that he suffered a protracted impairment of the function of bodily organs or members. We therefore conclude that substantial evidence to support the finding of serious physical injury does exist. This conclusion is consistent with our holding in *Lum v. State*, 281 Ark. 495, 665 S.W.2d 265 (1984), where we held that three blows to the head with a fist resulting in fractures to the face and the victim's hospitalization for five days was sufficient to support a finding of serious physical injury.

■ Mr. Harmon finally asserts that the evidence was insufficient to establish that he acted with the requisite mental state for battery in the first degree. A person acts purposely with respect to his conduct or a result thereof when it is his conscious object to engage in conduct of that nature or cause such a result. *Tarentino v. State*, 302 Ark. 55, 786 S.W.2d 584 (1991)(citing Ark. Code Ann. §

5-2-202(1)(1987)). Because of the obvious difficulty in ascertaining the actor's intent or state of mind, a presumption exists that a person intends the natural and probable consequences of his acts. *Id.* The factfinder may draw upon common knowledge and experience to infer the defendant's intent from the circumstances. *Id.* The trial court's conclusion in this case that Mr. Harmon acted with the purpose of causing serious physical injury is supported by Mr. Aydulun's testimony that Mr. Harmon came at Mr. Anglin's head like a field-goal kicker approaches a football, and by Mr. Cady's testimony that Mr. Harmon was the last one to leave the scene, and did so only after delivering several more kicks at Mr. Anglin's head. This conclusion is consistent with our holding in *Anderson v. State,* 312 Ark. 606, 852 S.W.2d 309 (1993): "Repeated blows to the head by kicking or 'stomping' when [a] man [is] down [exhibit] purposeful action to inflict serious physical injury whether it be risk of death or protracted disfigurement or impairment." *Id.; see also Lum v. State, supra; Bangs v. State, supra; Tarentino v. State, supra; Golden v. State,* 265 Ark. 99, 576 S.W.2d 955 (1979).

Furthermore, there is substantial evidence to support a finding that Mr. Harmon acted "under circumstances manifesting extreme indifference to the value of human life," pursuant to section 5-13-201(3). The plain meaning of that phrase demonstrates that the circumstances must by necessity be dire and formidable in terms of affecting human life. *Tigue v. State,* 319 Ark. 147, 889 S.W.2d 760 (1994). In short, first-degree battery "involves actions which create at least some risk of death which, therefore, evidence a mental state on the part of the accused to engage in some life-threatening activity against the victim." *Id.* (citing *Jones v. State,* 282 Ark. 56, 665 S.W.2d 876 (1984)). The foregoing evidence demonstrates that Mr. Harmon, along with five or six other assailants, kicked Mr. Anglin in the face and head multiple times while Mr. Anglin was on the ground. This evidence certainly supports the conclusion that Mr. Harmon engaged in life-threatening conduct against the victim.

Moreover, the evidence of life-threatening conduct in this case is distinguishable from the circumstances addressed in *Tigue v. State, supra,* where we held that immersion of the victim's hands in hot water causing third-degree burns was not life-threatening conduct. Likewise, *Bolden v. State,* 267 Ark. 504, 593 S.W.2d 156 (1980), is inapposite because the police officer in that case did not know what

caused his injury (a broken jaw and ribs) and "[t]he physician who examined the officer shortly after the incident testified that he had not observed any contusion on the officer's head, and there was no physical evidence of a severe blow to the back of the head." Id.

We therefore conclude that there is substantial evidence from which the trial judge, sitting as factfinder, could have reasonably determined that Mr. Harmon acted with the purpose to cause serious physical injury to Mr. Anglin under circumstances manifesting extreme indifference to the value of human life.

## II. Facts Not In Evidence

For his second point for reversal, Mr. Harmon argues that the trial court improperly relied on facts and evidence presented at the co-defendant's trial, over which the same judge presided. In support of this argument, he relies on the following colloquy, which occurred during the State's direct examination of the victim:

> Q: Are there any — as a result of — as a result of the injuries you received on
>
> MR. CRAIG: There's been no testimony of injury. Counsel's assuming the fact that's not in evidence.
>
> Q: Well, did you have any injuries on—
>
> A: I was in ICU for three days so, yes, I had very, very acute injuries.
>
> Q: Okay. Let's talk about your face. What happened? What was wrong with your face as a result of the beating you took on October—
>
> MR. CRAIG: Your Honor, Counsel is leading. Counsel is assuming facts not in evidence.
>
> THE COURT: Don't lead your witness and don't assume facts not in evidence. Now Mr. Craig, you're going to have to realize, also, that I've heard this gentleman testify about this same incident once before so there are some things that I do recall.
>
> MR. CRAIG: I understand, Your Honor, but that should have no bearing on this trial.
>
> THE COURT: I understand. All right, proceed.

■ ■ We are not persuaded that the trial court did anything improper. As Mr. Harmon acknowledges, there is a presumption that a trial judge will consider only competent evidence, and this presumption is overcome *only* when there is an indication that the trial judge gave some consideration to the inadmissible evidence. *See Clinkscale v. State*, 269 Ark. 324, 602 S.W.2d 618 (1980); *Fields v. State*, 36 Ark. App. 179, 820 S.W.2d 467 (1991). In *Clinkscale, supra*, the trial judge repeatedly made remarks about the defendant's prior, inadmissible convictions, calling him a "perpetual crime wave," and stating that "it's one thing to have one offense for stealing ... but the idea since 1970 you have all these...." Thus, there was no question that the trial judge considered the prior convictions during sentencing. Here, there is no indication from the record that the trial was truncated or shortened in any fashion, or that the trial judge considered any evidence other than what was presented to him during Mr. Harmon's trial. Nor does Mr. Harmon point to any specific evidence that the trial judge considered which prejudiced him. Thus, Mr. Harmon has failed to overcome the presumption that a trial judge will consider only competent evidence. Moreover, the trial judge appeared to acknowledge that he could not consider the testimony he heard at the previous trial.

### III. Confrontation of Witnesses

For his third point for reversal, Mr. Harmon argues that the trial court erred in allowing the State to elicit hearsay testimony during cross-examination of a defense witness. He urges that the trial court's ruling denied him the right to confront the witnesses against him, in violation of the Sixth Amendment to the United States Constitution. The State asserts that no such constitutional objection was made below.

The record reflects that Mr. Harmon called Sergeant Joe Oberle of the Little Rock Police Department to testify about information contained in the officer's affidavit of probable cause to arrest Mr. Harmon. At one point during the testimony, the prosecutor objected to questions regarding what a particular witness had told the officer on the ground that it was hearsay. Defense counsel responded that the evidence was not offered for the truth of the matter asserted, but, instead, only to show what information the

officer relied on in preparing the affidavit. The trial court allowed the evidence for that limited purpose.

On cross-examination, the prosecutor asked the officer about the witnesses described in the affidavit who had identified Mr. Harmon as one of the assailants. Defense counsel objected on the ground that the testimony was hearsay. The prosecutor argued that the testimony was admissible because (1) defense counsel had opened the door to this line of inquiry, and (2) the evidence was not being offered for the truth of the matter asserted. Defense counsel then argued that the evidence was irrelevant. The trial court allowed the evidence. Upon the prosecutor's conclusion of cross-examination, the following discussion occurred:

> MR. FINKELSTEIN: Pass the witness.
>
> MR. CRAIG: It's difficult to cross-examine hearsay, Your Honor, and I'd ask the Court in the interest of justice—
>
> THE COURT: This is your — this is your witness. This is your witness, Mr. Craig. And they're allowed a wide latitude on cross-examination.
>
> MR. CRAIG: But Your Honor, that is rank hearsay. Statements of people who are not present, who we cannot cross examine, and it is obviously prejudicial and it is improper.

Mr. Harmon argues that, although defense counsel never specifically referred to the constitutional right to confront the witnesses, it is apparent from the context of the objection that he was making such an argument. Be that as it may, Mr. Harmon has failed to show that he was prejudiced by the evidence because he opened the door to such testimony in the first place. See *Willis v. State*, 334 Ark. 412, 977 S.W.2d 890 (1998); *Puckett v. State*, 328 Ark. 355, 944 S.W.2d 111 (1997); *Smallwood v. State*, 326 Ark. 813, 935 S.W.2d 530 (1996). Indeed, the trial court based its ruling in part on the fact that Mr. Harmon "started talking about the report with this witness." Furthermore, the challenged evidence was admissible for the same reason that the trial court allowed similar evidence during defense counsel's questioning of the officer. It was not being offered for the truth of the matter asserted, but rather to show other information the officer relied on in preparing the affidavit. This court has repeatedly recognized that matters pertaining to the admissibility of evidence are left to the sound discretion of the trial

court, and we will not reverse such a ruling absent an abuse of that discretion. *See, e.g., Bell v. State*, 334 Ark. 285, 973 S.W.2d 806 (1998); *Bailey v. State*, 334 Ark. 43, 972 S.W.2d 239 (1998). Nor will we reverse absent a showing of prejudice, as prejudice is not presumed. *Hill v. State*, 337 Ark. 219, 988 S.W.2d 487 (1999); *Bell, supra.* Accordingly, we cannot say that the trial court abused its discretion in admitting the evidence.

### IV. Constitutionality of the Sentencing Guidelines

For his fourth point for reversal, Mr. Harmon argues that the trial court erred in refusing to declare Act 532 of 1993, the Sentencing Guidelines Act, unconstitutional for violating the doctrine of separation of powers. Specifically, Mr. Harmon contends that in passing Act 532, codified as Ark. Code Ann. §§ 16-90-801 to -804 (Supp. 1999), the General Assembly improperly delegated both legislative and judicial power to the Arkansas Sentencing Commission in violation of Article 4 of the Arkansas Constitution. We do not reach the merits of this argument, as Mr. Harmon has failed to show that he was prejudiced by the Act.

It is well settled that before a person can challenge the constitutionality of a statute, he or she must demonstrate that the challenged statute had a prejudicial impact upon him. *Nahlen v. State*, 330 Ark. 1, 953 S.W.2d 877 (1997); *Brooks v. State*, 328 Ark. 32, 941 S.W.2d 409 (1997). Here, Mr. Harmon cannot show that the Act was applied to him at all. Indeed, he admits that the trial court stated that it would not consider the pre-sentence report, and that it would impose sentence without regard for or reference to the sentencing guidelines. Mr. Harmon also does not dispute that the sentence imposed is within the range permitted by law for a Class B felony. *See* Ark. Code Ann. § 5-4-401(a)(3)(Repl. 1997). He contends, however, that the application of the guidelines to his case is obvious in that the sentence imposed by the trial court was the same as that established by the guidelines. The record reflects the trial court's ruling:

> THE COURT: I'm going to deny your motion and I'm not going to declare that act unconstitutional. It may well be, but let's let the other court out there make that decision rather than me. *But in addition to that I'm not necessarily going along with the sentencing guidelines in my proposed sentence. I've considered the full range and as I*

*understand it the penalty provisions under the sentencing guidelines are recommendations only anyway.*

\* \* \*

So it will be the judgment and sentence of the Court that he be taken by the Sheriff, delivered for the purpose of serving his term of ten years in the Arkansas Department of Corrections, *which is the same term as the co-defendant in this case got. And I did not follow the sentencing guidelines in that particular case. I departed from the sentencing guidelines, but I think this young man's sentence should be the same as the co-defendant's.*

(Emphasis added.) It is clear from this ruling that the trial court did not base his decision on the recommended sentence established in the sentencing guidelines; rather Mr. Harmon's sentence was based upon the trial court's determination that both co-defendants should receive the same punishment, ten years' imprisonment. Thus, because Mr. Harmon has failed to demonstrate that Act 532 had a prejudicial impact on him, we do not reach the merits of his constitutional challenge.

## V. Cumulative Error

Mr. Harmon lastly argues that the trial court erred in denying his cumulative error objection. He bases this argument on each of the four individual points of error raised on appeal, as well as two additional points: (1) the trial court's comments that Mr. Harmon's objections could be addressed on appeal; and (2) the trial judge's alleged bias against Mr. Harmon evidencing a predisposition to convict. Neither of these additional points were raised below. As such, we will not consider them on appeal. This court has repeatedly held that for a cumulative-error argument to be upheld on appeal, the appellant must show that there were objections to the alleged errors individually and that a cumulative-error objection was made to the trial court and a ruling obtained. *See, e.g., Gates v. State*, 338 Ark. 530, 2 S.W.3d 40 (1999); *Willis*, 334 Ark. 412, 977 S.W.2d 890. Moreover, we have considered the remaining assertions of error and concluded that no reversible error occurred in Mr. Harmon's trial. This court does not recognize the doctrine of cumulative error where there is no error to accumulate. *Nooner v.*

*State*, 322 Ark. 87, 907 S.W.2d 677 (1995); *Dillon v. State*, 317 Ark. 384, 877 S.W.2d 915 (1994).

Affirmed.

ARNOLD, C.J., THORNTON, J., and SPECIAL JUSTICE BUD CUMMINS, dissent.

CORBIN, J., not participating.

RAY THORNTON, Justice, dissenting. To be convicted of the crime of battery in the first degree, one must cause serious physical injury to another by means of a deadly weapon; cause injury which destroys, amputates, or permanently disables another person; or cause serious physical injury to another under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-13-201(a) (Repl. 1997). Based on our previous decisions interpreting this statute, I cannot agree with the majority that these elements were present in appellant's conduct in this case, and, therefore, I respectfully dissent.

In *Bolden v. State*, 267 Ark. 504, 593 S.W.2d 156 (1980), we held that, in order to sustain a conviction of first-degree battery, life-endangering conduct must generally be involved. There must be a severe injury in conjunction with a wanton or purposeful culpable mental state, and each subsection of the statute described conduct that would produce murder liability if death resulted. *Id.* Indeed, in *Bolden*, we reversed a conviction for first-degree battery where the defendant had kicked and beaten a police officer about the head and chest, resulting in a broken jaw, because there was insufficient evidence to show that the injuries were caused by a weapon, rather than by the beating and kicking that the officer sustained. *Id.*

Here, as in *Bolden*, there was no evidence of any weapon having been used against the victim by any of the several people who kicked and beat him. There was no showing that the victim suffered any injury resulting from the use of a weapon. The only evidence of intent to cause serious and permanent injury was one witness's account that he saw an attacker, whom he later identified as appellant, kick the victim's head, and, upon missing his head, back up and run, in cowboy boots, at the victim, kicking him in the

head. The only evidence of a "weapon" employed was the attacker's cowboy boots.

The evidence was scant that Harmon was the attacker wearing cowboy boots. Upon apprehension only fifteen minutes after the attack, Harmon was not wearing cowboy boots, nor did his clothing fit the description of the blood-stained garb given by witnesses. Unlike the majority, I cannot agree that the evidence presented was sufficient to sustain a conviction of first-degree battery. I respectfully dissent and would send the matter back to the trial court on the question whether the evidence would support a conviction for a lesser-included offense.

Dissent.

ARNOLD, C.J., and CUMMINS, S.J., join in this dissent.