Barbara Janelle TIGUE *v.* STATE of Arkansas

CR 93-1353                                    889 S.W.2d 760

Supreme Court of Arkansas
Opinion delivered December 19, 1994

*Larry Honeycutt*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Barbara Janelle Tigue, was convicted of first degree battery for burning the hands of her fiance's five-year-old daughter, Tasmine Wehunt. She received a sentence of 18 years and a fine of $10,000 and appeals the judgment of conviction on grounds that the circumstances of the injury did not manifest extreme indifference to human life as required for a conviction of first degree battery. Her precise

point on appeal is that the trial judge should have dismissed the first degree battery charge based on the proof presented. We agree and modify the judgment of conviction to the lesser included offense of second degree battery and assess the maximum sentence of six years and a fine of $10,000.

The incident occurred on June 9, 1992, near Amity while Tigue was acting as babysitter for Tasmine Wehunt. Following lunch at the house of Tigue's grandmother, Tasmine became ill and vomited in her hands. Tigue sent her to the bathroom to wash her hands and soon joined her there. While in the bathroom, Tasmine's hands were scalded by hot water, and she received second and third degree burns. The third degree burns on one hand required skin grafts.

How the burns occurred was disputed at trial. Tigue testified that Tasmine had burned her hands before she joined her in the bathroom; that she put vaseline on the hands after she found out about the accident; and that she then sought medical help. She testified that Tasmine was in the bathroom two or three minutes before she joined her.

Dr. James A. Little, a general surgeon at Arkansas Children's Hospital in Little Rock who treated Tasmine, testified that the burns could not have been accidental due to the time that one of her hands in particular would have had to have been in contact with the hot water to be burned so extensively. He also testified that the burns on that hand were "immersion" burns with a pattern which showed the level the scalding water reached up one arm as opposed to "splash" burns which are more associated with accidental burns. He stated that there was a line of demarcation on that arm below which the skin was burned and above which the skin was normal. There was also bruising around Tasmine's biceps and elbows which indicated to Dr. Little that one of Tasmine's hands was forcibly held in the hot water. The other hand exhibited splash burns, according to Dr. Little. He testified that Tasmine may have used that hand in an effort to remove her other hand from the hot water.

For her part, Tasmine told two people after the incident — her father, Terry Wehunt, and a social worker, Tamara Belcock — that "Janelle did it," and testified at trial that Tigue took her

to the bathroom and turned on the hot water. Tamara Belcock testified at trial that Tasmine told her that Janelle held her hands under the hot water and that she added, "Even when I yelled." She also testified to the bruises on Tasmine's upper arm.

The State first charged Tigue with second degree battery, a Class D felony. Two months later she was charged with first degree battery, a Class B felony. Tigue moved for a directed verdict at the close of the State's case and at the close of all of the evidence, asserting that the injury was not life-threatening and, hence, the proof was insufficient to sustain a verdict for first degree battery. The motions were denied, and the jury returned a guilty verdict for first degree battery and assessed the sentence of 18 years and the $10,000 fine.

Tigue's only point on appeal is that the trial court erred in denying her motions for a directed verdict on the first degree battery charge. Three statutes are involved in our analysis of this question. The first statute describes conduct for commission of first degree battery:

> (a) A person commits battery in the first degree if:
>
> . . . .
>
> (3) He causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life; . . . .

Ark. Code Ann. § 5-13-201(a)(3) (Repl. 1993).

"Serious physical injury" is defined by statute:

> "Serious physical injury" means physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ.

Ark. Code Ann. § 5-1-102(19) (Repl. 1993).

Second degree battery is described as follows:

> (a) A person commits battery in the second degree if:
>
> (1) With the purpose of causing physical injury to

another person, he causes serious physical injury to any person; . . . .

Ark. Code Ann. § 5-13-202(a)(1) (Repl. 1993).

■ The basic rule of statutory construction to which all other interpretive guides must yield is to give effect to the intent of the legislature. *Thomas* v. *State*, 315 Ark. 79, 864 S.W.2d 835 (1993). It is further well settled that penal statutes are strictly construed with all doubts resolved in favor of the defendant, and nothing is taken as intended which is not clearly expressed. *Id., citing Hales* v. *State*, 299 Ark. 93, 771 S.W.2d 285 (1988).

■ This case turns on the phrase "under circumstances manifesting extreme indifference to the value of human life" contained in § 5-13-201. That phrase is what distinguishes conduct constituting first degree battery from that of second degree battery. Giving the phrase its plain meaning, the circumstances of first degree battery must by necessity be more dire and formidable in terms of affecting human life. On this point, we stated in 1977 that the phrase relates to proof of the intent or mental state of the accused:

> In the case at bar the phrase "circumstances manifesting extreme indifference to the value of human life" indicates that the attendant circumstances themselves must be such as to demonstrate the culpable mental state of the accused. The language of the Arkansas statute does not require reasonable men to speculate as to its common understanding or application.

*Martin* v. *State*, 261 Ark. 80, 84, 547 S.W.2d 81, 83 (1977). The Commentary to the battery statutes goes further in illuminating the conduct and mental state embraced within first degree battery:

> For the most part, battery in the first degree comprehends only life-endangering conduct. The severity of punishment authorized is warranted by the conjunction of severe injury and a wanton or purposeful culpable mental state. Each subsection describes conduct that would produce murder liability if death resulted.

Ark. Code Ann., *Commentaries*, p. 674 (1989). It is clear to us

that first degree battery involves actions which create at least some risk of death and which, therefore, evidence a mental state on the part of the accused to engage in some life-threatening activity against the victim. *See, e.g., Jones v. State,* 282 Ark. 56, 665 S.W.2d 876 (1984).

The next step is a determination of whether the facts in this case can sustain a conviction for first degree battery. The test for determining sufficient proof is whether there is substantial evidence to support the verdict. *Daffron v. State,* 318 Ark. 182, 885 S.W.2d 3 (1994); *Friar v. State,* 313 Ark. 253, 854 S.W.2d 318 (1993). On appeal, this court reviews the evidence in the light most favorable to the appellee and sustains the conviction if there is any substantial evidence to support it. *Daffron, supra; Abdullah v. State,* 301 Ark. 235, 783 S.W.2d 58 (1990). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Daffron, supra; Jones v. State,* 269 Ark. 119, 598 S.W.2d 748 (1980).

Here, there is no question that Tasmine suffered a "serious physical injury," as defined under § 5-1-102(19). She received third degree burns on one hand which required skin grafts and resulted in permanent scarring and second degree burns on the other hand. But that is only one facet of proof necessary to sustain a conviction for first degree battery under § 5-13-201(a)(3).

There is no evidence that we can ascertain from the record that Tasmine was injured under circumstances manifesting extreme indifference to the value of human life. There was no testimony produced at trial to this effect; not even Tasmine's treating physician, Dr. Little, suggested this. We conclude that a plain reading of the statute defining first degree battery requires a higher level of culpability than was exhibited in the case before us.

Where the evidence presented is insufficient to sustain a conviction for a certain crime, but where there is sufficient evidence to sustain a conviction for a lesser included offense of that crime, this court may "reduce the punishment to the maximum for the lesser offense, reduce it to the minimum for the lesser offense, fix it . . . at some intermediate point, remand the case to the trial court for the assessment of the penalty, or grant

a new trial either absolutely or conditionally." *Trotter* v. *State*, 290 Ark. 269, 719 S.W.2d 268 (1986), *quoting Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977); *see also Davidson* v. *State*, 305 Ark. 592, 810 S.W.2d 327 (1991).

■  The evidence in this case would clearly sustain a conviction of second degree battery because we have no doubt that there was sufficient proof that Tigue inflicted serious physical injury, as defined by statute, on Tasmine. We, therefore, modify the judgment of conviction to the lesser included offense of second degree battery under Ark. Code Ann. § 5-13-202(a)(1) (Repl. 1993) and reduce the sentence to the maximum term of years for a Class D felony — six years — and the maximum allowable fine — $10,000. *See* Ark. Code Ann. §§ 5-4-201(a)(2), 5-4-401(a)(5) (Repl. 1993).

Affirmed as modified.

HAYS and GLAZE, JJ., dissent.

STEELE HAYS, Justice, dissenting. I disagree with the majority's conclusion that the legislature intended the first degree battery statute to require a life-threatening injury. The majority finds the phrase, "under conditions manifesting extreme indifference to the value of human life" as distinguishing first degree battery from second degree battery. A comparison of the pertinent second degree battery statute demonstrates an existing difference between the two degrees of battery:

Ark. Code Ann. § 5-13-202(a) (1987).

A person commits battery in the second degree if

(1) With the *purpose of causing physical injury* to another person, he causes serious physical injury to any person.

Second degree battery requires a mental state of purposefully causing *physical injury*. First degree battery requires a mental state of purposefully causing *serious physical injury,* under subsections (a) 1, 2, and 3. *See Tarrentino* v. *State*, 302 Ark. 55, 786 S.W.2d 584 (1990), and Ark. Code Ann. § 5-2-203(c) (1987). We stated in *Tarrentino*:

The main way in which first degree battery [under sections -201(a) 1, 2 and 3] differs from second and third

degree battery is the state of mind of the actor. To be convicted of first degree battery, a defendant must act with the purpose of causing serious physical injury to another person.

In other words, under second degree, while the victim must have suffered serious physical injury, the defendant's mental state need only be with the purpose of causing simple *physical injury*. In first degree, the injury is the same but the defendant must have acted with the purpose of causing *serious physical injury*.

Because there is already this existing distinction in the mental states between first and second degree, it is not necessary to interpret the "extreme indifference language" to distinguish the two degrees of battery. Indeed, while I have found no agreement on the definition of the "extreme indifference" language, there is general agreement that when added to an existing mental-state requirement in a statute, that language elevates the offense by adding something to the mental requirement in the nature of wickedness, wantonness or depravity, and does not necessarily refer to the results of the conduct. *See State* v. *Boone*, 661 P.2d 917 (Or. 1983).

Further, contrary to the majority's claim, the Commentary does not support its decision. The Commentary states:

> *For the most part*, battery in the first degree comprehends only life-endangering conduct.

This language does not provide that *all* injuries for first degree battery must be life-threatening, but only "for the most part." That language clearly implies there will be injuries under certain circumstances that will *not* be life-threatening. There is nothing else in the Commentary that contradicts this obvious interpretation and if the legislature had wanted all first degree batteries to be life-threatening, it could have easily said so.

Finally, the aggravated assault offense under the Model Penal Code uses the "extreme difference to human life" language but does not address whether it requires life-endangering conduct or injury. However, all the battery statutes of other states containing the "extreme indifference" language, which I have found are in agreement that the language does not require life-threatening

injury. *See e.g. State* v. *Joseph*, 597 A.2d 805 (Vt. 1991); *State* v. *Saucier*, 128 N.H. 291, 512 A.2d 1120 (1986); *State* v. *Dodd*, 503 A.2d 1302 (Me. 1986).

GLAZE, J., joins in this dissent.