Wesley BRITT, Jr. *v*. STATE of Arkansas

CA CR 02-973 118 S.W.3d 140

Court of Appeals of Arkansas
Division II
Opinion delivered September 24, 2003

[Petition for rehearing denied October 22, 2003.]

*Danny Ray Williams*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

JOHN MAUZY PITTMAN, Judge. The appellant in this criminal case was charged with battery in the first degree. After a bench trial, appellant was convicted of that offense and sentenced to a term of ten years' imprisonment, with three years suspended. From that decision, comes this appeal.

For reversal, appellant contends that the evidence was insufficient to support his conviction of battery in the first degree because there was no substantial evidence to show that the victim suffered a serious physical injury, or to show that appellant intentionally or knowingly inflicted the injury. Appellant also contends that the trial court erred in denying his motion to suppress the third of three statements he made to police officers, asserting that the interrogating officer improperly initiated contact with appellant after appellant had invoked his right to counsel. We affirm.

A person commits battery in the first degree if he intentionally or knowingly without legal justification causes serious physical injury to one he knows to be twelve years of age or younger. Ark. Code Ann. § 5-13-201(a)(6) (Repl. 1997). When the sufficiency of the evidence is challenged on appeal, the test is whether there is substantial evidence to support the verdict; substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another. *Taylor v. State*, 77 Ark. App. 144, 72 S.W.3d 882 (2002). In determining whether the evidence is substantial, we view the evidence in the light most favorable to the State, considering only the evidence that supports the verdict. *Id.*

Viewing the evidence in that light, the record reflects that appellant was babysitting for his girlfriend's two-year-old child while his girlfriend was out of town. While in appellant's care, the child was bathed by appellant and received second-degree burns, primarily on her feet and ankles. Appellant's mother, a nurse, took the child to a local physician for treatment, explaining that the

child's feet were injured because her shoes were too tight. The child's great-grandmother subsequently talked to the child on the telephone and, alarmed by the child's distress, sent a family member to get the child. The great-grandmother, upon seeing the child's injuries and observing that the child was in pain and hysterical, took the child to Arkansas Children's Hospital for emergency treatment. The physicians at the hospital observed that the child had extensive scalding burns primarily on her feet, with a sharp line of demarcation on the lower ankles, and determined that she had sustained an intentionally-inflicted immersion injury in which the child was forcibly held in position while immersed in scalding water. According to the physicians' testimony, accidental scalding injuries do not show such a pronounced line of demarcation because a child would not willingly remain in such hot water long enough to produce burns of this nature. The tops of the child's feet were almost entirely blistered. To counter the danger of infection, the physicians were required to debride the skin from the blistered area. Debriding is a very painful procedure normally requiring the administration of morphine in adults for pain relief. The child was very fearful during the examination, requiring administration of a stronger narcotic than was originally given. The examination also revealed that the child had sustained extensive bruising on her back, lower back, and gluteus area. The bruising was several different colors, ranging from deep red to dark blue and dark purple. The entire region from the middle of her shoulder blades to her buttocks was almost total confluent bruising caused by trauma.

 Appellant first argues that the evidence is not sufficient to show that the child suffered a serious physical injury. We do not agree. "Serious physical injury" means physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the function of any bodily member or organ. Ark. Code Ann. § 5-1-102(19) (Supp. 2001). The record shows that the victim in the present case was unable to walk upon arrival at the emergency room and was still unable to walk at the time of her release from the hospital several days later. She required a course of physical therapy to prevent her injuries from resulting in a permanent loss of mobility, and there was testimony that she still bore scars from the incident two years later. The question of temporary or protracted impairment is one for the jury, *Harmon v. State*, 260 Ark. 665, 543 S.W.2d 43 (1976), and several cases have held that

similar or lesser injuries were serious within the meaning of the statute. *See, e.g., Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999); *Harmon v. State, supra.* Even the case upon which appellant principally relies, *Tigue v. State*, 319 Ark. 147, 889 S.W.2d 760 (1994), held that an immersion injury comparable to the injury in the case at bar constituted a "serious physical injury." *Id.* at 152, 889 S.W.2d at 762. We hold that there is substantial evidence to show that the victim in the present case sustained a serious physical injury as defined by Ark. Code Ann. § 5-1-102(19).

Appellant next contends that the evidence is insufficient to show that he intentionally injured the child. This argument is based squarely on the following portion of *Tigue*:

> This case turns on the phrase "under circumstances manifesting extreme indifference to the value of human life" contained in § 5-13-201. That phrase is what distinguishes conduct constituting first degree battery from that of second degree battery. Giving the phrase its plain meaning, the circumstances of first degree battery must by necessity be more dire and formidable in terms of affecting human life. On this point, we stated in 1977 that the phrase relates to proof of the intent or mental state of the accused:
>
>> In the case at bar the phrase "circumstances manifesting extreme indifference to the value of human life" indicates that the attendant circumstances themselves must be such as to demonstrate the culpable mental state of the accused. The language of the Arkansas statute does not require reasonable men to speculate as to its common understanding or application.
>
> *Martin v. State*, 261 Ark. 80, 84, 547 S.W.2d 81, 83 (1977). The Commentary to the battery statutes goes further in illuminating the conduct and mental state embraced within first degree battery:
>
>> For the most part, battery in the first degree comprehends only life-endangering conduct. The severity of punishment authorized is warranted by the conjunction of severe injury and a wanton or purposeful culpable mental state. Each subsection describes conduct that would produce murder liability if death resulted.

Ark. Code Ann., *Commentaries*, p. 674 (1989). It is clear to us that first degree battery involves actions which create at least some risk of death and which, therefore, evidence a mental state on the part of the accused to engage in some life-threatening activity against the victim. *See, e.g., Jones v. State*, 282 Ark. 56, 665 S.W.2d 876 (1984).

The next step is a determination of whether the facts in this case can sustain a conviction for first degree battery. The test for determining sufficient proof is whether there is substantial evidence to support the verdict. *Daffron v. State*, 318 Ark. 182, 885 S.W.2d 3 (1994); *Friar v. State*, 313 Ark. 253, 854 S.W.2d 318 (1993). On appeal, this court reviews the evidence in the light most favorable to the appellee and sustains the conviction if there is any substantial evidence to support it. *Daffron, supra; Abdullah v. State*, 301 Ark. 235, 783 S.W.2d 58 (1990). Evidence is substantial if it is of sufficient force and character to compel reasonable minds to reach a conclusion and pass beyond suspicion and conjecture. *Daffron, supra; Jones v. State*, 269 Ark. 119, 598 S.W.2d 748 (1980).

Here, there is no question that Tasmine suffered a "serious physical injury," as defined under § 5-1-102(19). She received third degree burns on one hand which required skin grafts and resulted in permanent scarring and second degree burns on the other hand. But that is only one facet of proof necessary to sustain a conviction for first degree battery under § 5-13-201(a)(3).

There is no evidence that we can ascertain from the record that Tasmine was injured under circumstances manifesting extreme indifference to the value of human life. There was no testimony produced at trial to this effect; not even Tasmine's treating physician, Dr. Little, suggested this. We conclude that a plain reading of the statute defining first degree battery requires a higher level of culpability than was exhibited in the case before us.

*Tigue v. State*, 319 Ark. at 151-52, 889 S.W.2d at 761-62.

■ ■ The holding in *Tigue* is based on the particular statutory requirement of subsection (a)(3) of section 5-13-201, which requires that the actor cause serious physical injury to another person under circumstances manifesting extreme indifference to human life. However, the appellant in the present case was not charged with violating that subsection. The subsection that appellant was found to have violated did not exist at the time *Tigue*

was decided, but instead originated in an Act to Expand the ' Definition of Battery in the First Degree, Act 360 of 1995, enacted in the legislative session following the decision in *Tigue*. This Act added subsection (a)(6), providing that a person also commits , battery in the first degree if he intentionally or knowingly without legal justification causes serious physical injury to one he knows to be twelve years of age or younger. Ark. Code Ann. § 5-13-201(a)(6). Unlike the subsection at issue in *Tigue*, subsection (a)(6) has no requirement of an intent manifesting extreme indifference to human life. Appellant in the present case was charged with and convicted of a violation of Ark. Code Ann. § 5-13-201(a)(6), and the discussion of subsection (a)(3) found in *Tigue* is inapplicable. Instead, the question in the present case is simply whether the evidence supports a finding that appellant acted intentionally or knowingly, and there was a plethora of medical testimony to show that the victim's injuries could not have been accidental but were instead intentionally inflicted. We cannot say that this testimony does not constitute substantial evidence that appellant acted knowingly or intentionally.

Finally, appellant argues that the trial court erred in denying his motion to suppress a custodial statement. Statements arising from custodial interrogation are presumed to be involuntary. The burden is thus on the State to prove that a defendant knowingly and intelligently waived his privilege ·against self-incrimination and his right to an attorney, and that he voluntarily made the statement. *Scherrer v. State*, 294 Ark. 227, 742 S.W.2d 877 ·(1988); *Scales v. State*, 37 Ark. App. 68, 824 S.W.2d 400 (1992). On appeal from the denial of a motion to suppress, we make an independent review based on the totality of the circumstances, but we defer to the trial court's superior position to determine the issue of the credibility of the witnesses who testify to the circumstances of a defendant's custodial statement, and we will not reverse the trial court's findings of historical fact unless they are found to be clearly erroneous. *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003); Brunson *v. State,* 41 Ark. App. 39, 848 S.W.2d 936 (1993); *see Davis v. State*, 351 Ark. 406, 94 S.W.3d 892 (2003).

The record shows that appellant made three custodial statements to police, all of which were accompanied by waivers of appellant's *Miranda* rights. The statement appellant sought to suppress was his third and final statement. At the conclusion of the second statement, appellant invoked his right to counsel and refused to answer further questions. At the suppression hearing,

Officer Raney, who took appellant's second statement, testified that the taking of the third statement was initiated by appellant, who told her after the tape had stopped that he really wanted to talk to the police further and tell them what happened.

Although it is true that, where an accused has invoked his right to counsel, courts may admit his responses to further questioning only upon finding that he both initiated further discussions with police, and knowingly and intelligently waived the right to counsel he had previously invoked, *Brunson v. State*, *supra* (citing *Smith v. Illinois*, 469 U.S. 91 (1984)), we cannot say on this record that the trial court clearly erred in finding that the appellant initiated the further discussions with the police that culminated in the taking of the third statement. Viewing the totality of the circumstances of record, and giving due deference to the trial court's superior position to resolve questions of credibility, we cannot say the trial court erred in denying appellant's motion to suppress his third custodial statement.

Affirmed.

GLADWIN, J., agrees.

BAKER, J., concurs.