Cite as 2019 Ark. App. 476

# ARKANSAS COURT OF APPEALS

DIVISION IV

No. CR-19-323

| | |
|---|---|
| MICHAEL LANCE TURNER | **Opinion Delivered:** October 23, 2019 |
| APPELLANT | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT, EASTERN DISTRICT |
| V. | [NO. 16LCR-17-21] |
| STATE OF ARKANSAS | HONORABLE DAN RITCHEY, JUDGE |
| APPELLEE | |
| | AFFIRMED |

**MEREDITH B. SWITZER, Judge**

On July 26, 2016, while driving his in-laws' truck, appellant Michael Turner crossed the center line and hit Mary Nietch's 2005 Nissan Sentra in a head-on collision. Turner was convicted by a Craighead County Circuit Court jury of battery in the first degree. He was sentenced as a habitual offender to thirty years in prison. On appeal, Turner argues the circuit court erred in denying his motion for directed verdict. We affirm.

## I. *Trial Testimony*

Winfred Saffell, chief of police for the Lake City Police Department, testified that he worked the Turner/Nietch accident on July 26, 2016. He arrived six minutes after the wreck and found the front of Nietch's car was "smashed in." Nietch was unconscious and trapped inside the car. Chief Saffell stated that the rear of Nietch's car was hanging off the bridge embankment, and there were no brake marks. According to Chief Saffell, a search

warrant was issued for a blood draw on Turner; this blood draw was performed by NEA Hospital and submitted to the Arkansas State Crime Lab. On February 16, 2017, Turner pleaded guilty in district court to driving while intoxicated (DWI), first offense, in connection with this incident.

Dr. Deborah Cook, an emergency-room doctor at St. Bernard's Hospital, testified that she treated Nietch after the wreck. She was in critical condition when she arrived, was intubated due to respiratory failure after the trauma, and was unable to breathe effectively on her own. Dr. Cook explained Nietch suffered a suspected depressed-scalp fracture in which the bone encasing the brain was fractured and sunken in; a fracture of one of her femur bones; blood behind her eardrum; and broken bones in her lower arm. Dr. Cook said that due to the serious nature of her injuries, Nietch was transferred to St. Vincent Hospital.

Herb Davis, a first responder from Lake City, testified that when he arrived at the crash scene, he saw Turner lying unconscious on the side of the road. Davis could tell there had been a head-on collision.

Daniel Haynes, an officer with the Lake City Police Department, testified he prepared the affidavit for the search warrant to draw Turner's blood. Turner's blood was drawn by a registered nurse; when the vials of blood were delivered to Haynes, he sealed the vials in an evidence bag, transported the bag to the police department, placed it in a locked refrigerator, and mailed the vials to the crime lab the next day. Officer Haynes also testified that Turner entered a guilty plea on February 16, 2017, to DWI, first offense.

Eric Westhafer, an analyst for the Arkansas State Crime Lab, testified he found no alcohol in Turner's blood, but the blood tested positive for benzodiazepines, THC, and methamphetamine. Westhafer explained that the investigating officer did not request a quantitative analysis of the drugs in Turner's system, only a determination of whether there were any drugs in his system. Westhafer said because the drug amounts in Turner's system were unknown, there was nothing to indicate whether he was impaired.

Dr. Ali Raja, a neurosurgeon at St. Vincent, testified via video that he treated Nietch after her car wreck. He said there were concerns about bleeding on the brain, which was causing too much pressure on Nietch's brain. He explained Nietch's injury was a closed-head injury, which caused swelling in the brain, and there was an intraparenchymal hemorrhage, which meant that the swelling was in the brain matter itself. Dr. Raja stated Nietch underwent emergency surgery to provide more room for her swelling brain; she remained in a coma for several months after the surgery; and she was in critical condition for several weeks.

Derrick Taylor witnessed the wreck. He said Turner's truck "came up" behind him on the highway, Turner was swerving around cars, and Turner passed him. Taylor testified Turner was traveling at such a high rate of speed it made other drivers look as though they were standing still. Taylor said the wreck occurred about thirty seconds after Turner had passed him.

Jackie Brewer also witnessed the wreck. Brewer said Turner passed him at the end of the bridge in the passing lane. According to Brewer, he was driving the speed limit,

while Turner appeared to be driving much faster. Brewer saw Turner cross the center line and hit Nietch's car, which was in the proper lane.

Hannah Ashabranner also saw the collision. She testified Nietch was following her home from Jonesboro and was a car length behind her. Ashabranner, whose daughter was also in her car, saw the truck coming toward her, driving fast and swerving in and out around the cars. She said Turner missed her car and hit Nietch's car; Ashabranner saw the impact of the wreck in her rearview mirror.

After the State rested, Turner moved for a directed verdict. While he admitted Nietch suffered serious injuries, he argued there was insufficient proof of circumstances manifesting extreme indifference to the value of human life. He contended there was not a quantitative test performed on his blood to show whether he was impaired, and the proof of actions that create at least the risk of death must show a mental state on the part of the accused to engage in some life-threatening activity against the victim. Turner's motion was denied by the circuit court. Turner called no witnesses. He renewed his directed-verdict motion, arguing the State had not proved the allegations because it failed to show there was an injury caused under circumstances manifesting extreme indifference to the value of human life. His motion was again denied, and the jury returned a guilty verdict against Turner.

## II. *Standard of Review*

On appeal, a motion for directed verdict is treated as a challenge to the sufficiency of the evidence. *Robinson v. State*, 2017 Ark. App. 689, 537 S.W.3d 765. Appellate courts will affirm the conviction if there is substantial evidence to support it; substantial evidence

is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another and pass beyond mere suspicion or conjecture. *Id*. In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence supporting the verdict. *Id*. We do not weigh the evidence presented at trial or assess witness credibility. *Turner v. State*, 2018 Ark. App. 5, 538 S.W.3d 227. It is the jury's role as the finder of fact to resolve questions of inconsistent evidence and conflicting testimony, and the jury is free to believe the State's version of the facts over the defendant's account. *Robinson*, *supra*. The jury is not required to abandon common sense, and it may draw reasonable inferences from the evidence. *Robinson*, *supra*.

### III. *Battery in the First Degree*

A person commits battery in the first degree if he or she "causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-13-201(a)(3) (Repl. 2013).

Turner conceded at trial, and again on appeal, that Nietch suffered serious physical injury as a result of the wreck. However, Turner contends the State failed to prove the culpable mental state required to find that he acted under circumstances manifesting extreme indifference to the value of human life. Turner argues he was "simply operating a motor vehicle and the State did not produce proof that the substances found in his system caused him to act purposefully or knowingly." We disagree.

A criminal defendant's intent or state of mind is rarely capable of proof by direct evidence and must usually be inferred from the circumstances of the crime. *Suchey v. State*,

5

2016 Ark. App. 225, 490 S.W.3d 320. The phrase "circumstances manifesting extreme indifference to the value of human life" indicates that "the attendant circumstances themselves must be such as to demonstrate the culpable mental state of the accused"; thus, extreme indifference is "in the nature of a culpable mental state and therefore is akin to intent." *Rongey v. State*, 2018 Ark. App. 617, at 2–3, 566 S.W.3d 161, 164. Circumstances manifesting extreme indifference require "deliberate conduct with a knowledge or awareness that one's actions are practically certain to bring about the prohibited result," *Brown v. State*, 2014 Ark. App. 79, at 2, and the circumstances "must by necessity be more dire and formidable in terms of affecting human life." *Estacuy v. State*, 94 Ark. App. 183, 186, 228 S.W.3d 567, 570 (2006) (citing *Harmon v. State*, 340 Ark. 18, 27, 8 S.W.3d 472, 478 (2000)). Furthermore, "it involves actions that create risk of death, which evidence the mental state to engage in some type of life-threatening activity against the victim." *Williamson v. State*, 2011 Ark. App. 73, at 5, 381 S.W.3d 134, 137.

Knowing the quantitative amounts of the specific drugs in Turner's system at the time of the wreck is not necessary to determine his intent. While it is true the chemical analysis performed on Turner's blood was not quantitative, and therefore the specific amount of illegal drugs in Turner's system was unknown, Turner pled guilty to DWI, first offense, in district court in connection with these events prior to his jury trial for battery in the first degree. His certified conviction from district court was entered into evidence for the jury's consideration. The circuit court found that Turner's plea in district court was entered knowingly, voluntarily, and intelligently and that he had made a voluntary and knowing waiver of counsel. A person who operates an automobile while intoxicated does

6

so under circumstances manifesting extreme indifference to the value of human life. *Hoyle v. State*, 371 Ark. 495, 268 S.W.3d 313 (2007); *Estacuy, supra*. By pleading guilty to DWI, Turner admitted he possessed the requisite intent for battery in the first degree.

Furthermore, there was other evidence Turner was acting with extreme indifference to the value of human life at the time of the wreck. Turner had three different drugs in his system; other drivers on the road testified that he was driving his truck at such a high rate of speed it felt as though they were standing still; he swerved in and out of traffic on the road; and he crossed the center line, striking Nietch's vehicle head on and without any indication of an attempt to apply his brakes. These actions were practically certain to bring about the prohibited result—the head-on collision with Nietch while Turner was speeding and in Nietch's lane of traffic. The circuit court did not err in denying Turner's motion for directed verdict, and there is substantial evidence to support the jury's verdict.

Affirmed.

HARRISON and KLAPPENBACH, JJ., agree.

*Terry Goodwin Jones*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Senior Ass't Att'y Gen., for appellee.