Cite as 2021 Ark. App. 339

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CR–20–604

| | | |
|---|---|---|
| EDDIE DALE KING | | **Opinion Delivered** September 22, 2021 |
| | APPELLANT | |
| | | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-18-595] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE ALEX GUYNN, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Appellant Eddie Dale King was convicted by a Jefferson County Circuit Court jury of two counts of first-degree battery. His convictions stem from King's brutal attack of Carol and Chester Deubel in their home. Following the jury's recommendation, the circuit court imposed twenty-five-year sentences for each conviction and ordered that the sentences be served consecutively for an aggregate term of fifty years' imprisonment. King's sole point on appeal challenges the sufficiency of the evidence. We affirm.

Viewed in the light most favorable to the State, the evidence established the following facts. The Deubels moved to Arkansas from Arizona to retire. On October 9, 2018, King, a local handyman, came to their home. While talking to Carol, "[s]omething set [King] off," and he violently attacked her.

Carol screamed, and Chester, standing nearby, turned around to see King dragging her backward in a chokehold. As Carol bit King's arm because "she did [not] have anything

to do but bite him," Chester rushed to her defense, lunging at King, and King struck Chester with the "hammer in [his] hand." Carol blacked out after King threw her down; when she regained consciousness, she witnessed King beating Chester with a hammer. Carol ran at King and jumped on his back, but King struck her in the head with the hammer four times and dragged her away from Chester breaking two of her fingers and six of her ribs in the process.

King continued to beat Chester with a hammer. Carol testified that "[i]f [she had] ever seen the devil, [she] saw it in [King's] eyes that day." Seeing King run toward her "with the hammer as high up in the air as he could possibly get it," Carol thought, "Lord, I know I'm going to die." King's attack ended just as quickly as it had begun, however, when King got in his truck, and drove away.

Steven Griego, a Dish Network technician with no connection to King or the Deubels, witnessed the attack. According to Griego, King placed Carol in a guillotine-style chokehold. As Chester ran to Carol's aid, Griego saw King swinging at the elderly man and "blood just shooting" from his head.

Due to the severity of the injuries King inflicted, Chester underwent emergency surgery, including surgery to remove the piece of skull lodged in his brain by King's attack. Chester remained in the hospital for ten days before being transferred to a rehabilitation center for several weeks. Although Carol did not require emergency surgery, she still suffered substantial injuries. Because King's attack left Chester with a piece of his skull lodged in his brain, a wound in the upper left part of his skull, and another on his chest; and Carol with four head wounds, two broken fingers, six broken ribs and significant swelling

2

of her hand, the State charged King with two counts of first-degree battery. A jury trial was held on August 26 and 27, 2019, and King was convicted of both counts of first-degree battery.

On appeal, King challenges the sufficiency of the evidence supporting his convictions. He does not deny that he inflicted serious physical injury on the Deubels but claims that the State failed to prove that he inflicted those injuries under circumstances manifesting extreme indifference to human life.

When the sufficiency of the evidence is challenged in a criminal conviction, our court views the evidence in the light most favorable to the verdict and considers only the evidence supporting it. *Adkins v. State*, 371 Ark. 159, 264 S.W.3d 523 (2007). We will affirm if the finding of guilt is supported by substantial evidence. *Id.* Substantial evidence is evidence of such sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Fernandez v. State*, 2010 Ark. 148, 362 S.W.3d 905.

In reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence or assess the credibility of the witnesses. *Turner v. State*, 2019 Ark. App. 476, at 5, 588 S.W.3d 375, 378. It is the jury's role as the finder of fact to resolve questions of inconsistent evidence and conflicting testimony, and the jury is free to believe the State's version of the facts over the defendant's account. *Id.* The jury, in the course of its deliberations, is not required to abandon common sense and may draw reasonable inferences from the evidence. *Id.*

A person commits battery in the first degree if he or she "causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life." Ark. Code Ann. § 5-13-201(a)(3) (Repl. 2013). Extreme indifference is "in the nature of a culpable mental state and therefore is akin to intent." *Turner*, 2019 Ark. App. 476, at 6, 588 S.W.3d at 378. Circumstances require "deliberate conduct with a knowledge or awareness that one's actions are practically certain to bring about the prohibited result," and the circumstances must, by necessity, be of a nature that are "more dire and formidable in terms of affecting human life" than those that constitute lesser offenses. *Id*. Furthermore, circumstances manifesting extreme indifference involve "actions that create risk of death, which evidence the mental state to engage in some type of life-threatening activity against the victim." *Id*. at 6, 588 S.W.3d at 378–79.

King's appellate argument, which was first made in his motion for directed verdict to the circuit court,[1] focuses on the second element that the State had to prove: "under circumstances manifesting extreme indifference to human life." *See* Ark. Code Ann. § 5-13-201(a)(3). In support of his argument, King cites *Tigue v. State*, 319 Ark. 147, 889 S.W.2d 760 (1994), and contends that the first-degree-battery statute requires circumstances to be "dire and formidable in terms of affecting human life." This argument is misplaced. King's conduct of placing Carol in a chokehold and striking both her and Chester in the head with a hammer created a risk of death clearly distinguishable from the non-life-

---

[1]At the close of all the evidence, King renewed his motion for directed verdict "word-for-word as previously stated."

threatening conduct of burning a young child's hands while washing them with scalding water. *See Tigue*, 319 Ark. at 149, 889 S.W.2d at 760.

We hold that the verdict in this case is supported by substantial evidence. The jurors' conclusion that King manifested extreme indifference to human life by engaging in deliberate conduct that was practically certain to create a risk of death is supported by the testimony of the attack. Attacking Carol by dragging her in a guillotine-style chokehold and striking Chester in the head with a hammer repeatedly and with such force as to drive a skull fragment into his brain were life-threatening activities. Further, the fact-finders were free to believe the State's testimony rather than King's self-serving testimony that he did not intend to hurt the Deubels. Viewing the evidence in the light most favorable to the verdict, we conclude that there was more than sufficient evidence to sustain King's first-degree-battery convictions. Accordingly, we affirm.

Affirmed.

VIRDEN and HIXSON, JJ., agree.

*Brian G. Brooks, Attorney at Law, PLLC*, by: *Brian G. Brooks*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.