Cite as 2022 Ark. App. 424

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-22-21

| | |
|---|---|
| STACY ANTHONY MITCHELL<br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br>APPELLEE | Opinion Delivered October 26, 2022<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CR-19-368]<br><br>HONORABLE BRADLEY LEWIS KARREN, JUDGE<br><br>AFFIRMED |

## PHILLIP T. WHITEAKER, Judge

Appellant Stacy Mitchell was convicted by a Benton County jury of one count of first-degree battery[1] and sentenced to a total of twenty-one years in the Arkansas Department of Correction as a habitual offender. On appeal, Mitchell argues that the circuit court erred when it denied his motion for substitution of counsel. In addition, he argues that there was insufficient evidence to support his conviction for first-degree battery. We affirm.

### I. *Sufficiency of the Evidence*

Although Mitchell challenges the sufficiency of the evidence in his second point on appeal, double-jeopardy considerations require this court to consider it first. *See Keys v. State*,

---

[1]Mitchell was also charged with one count of second-degree battery and one count of failure to appear. The jury convicted him on the failure-to-appear charge but acquitted him of second-degree battery.

2021 Ark. App. 469, at 6, 636 S.W.3d 835, 839 (citing *Taffner v. State*, 2018 Ark. 99, 541 S.W.3d 430). When we consider a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and consider only the evidence supporting it. *Adkins v. State*, 371 Ark. 159, 264 S.W.3d 523 (2007). We will affirm if the finding of guilt is supported by substantial evidence. *King v. State*, 2021 Ark. App. 339. Substantial evidence is evidence of such sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Fernandez v. State*, 2010 Ark. 148, 362 S.W.3d 905. In reviewing a challenge to the sufficiency of the evidence, we do not reweigh the evidence or assess the credibility of the witnesses. *Turner v. State*, 2019 Ark. App. 476, at 5, 588 S.W.3d 375, 378. It is the jury's role as the finder of fact to resolve questions of inconsistent evidence and conflicting testimony, and the jury is free to believe the State's version of the facts over the defendant's account. *Id.*

Mitchell was convicted of first-degree battery. A person commits first-degree battery if, with the purpose of causing serious physical injury to another person, the person causes serious physical injury to any person by means of a deadly weapon or causes serious physical injury to another person under circumstances manifesting extreme indifference to the value of human life. Ark. Code Ann. § 5-13-201(a)(1) & (3) (Supp. 2019). A "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious physical injury." Ark. Code Ann. § 5-1-102(4)(B) (Repl. 2013). "Serious physical injury" means "physical injury that creates a substantial risk of death or that causes protracted disfigurement, protracted impairment of health, or loss or protracted impairment of the

function of any bodily member or organ." Ark. Code Ann. § 5-1-102(21). We now turn our attention to the facts introduced at trial, viewing this evidence in the light most favorable to the State.

On the evening of February 2, 2019, Chelsea Roberts and some friends, including Lauren Patanus, Kent Fisher, and Christian McKinnis, were socializing on the back patio of JJ's Bar and Grill in Rogers. They were approached by appellant Mitchell, who started making vulgar comments to Roberts. Fisher intervened and asked Mitchell to stop, which led to an exchange of words between Fisher and Mitchell, and the exchange of words led to a fight between them. A JJ's employee removed Mitchell from the patio and escorted him out through the front of the building.

After Mitchell had been escorted through the front of the building, Roberts and her friends decided to exit through a side door to avoid him. This was unsuccessful. Outside the building, Mitchell once again approached them. Fisher saw Mitchell pull a knife out of his pocket, flip it open, and "[take] off at a dead sprint" toward the group. Fisher alerted the others and told them to run. They attempted to reenter the building but could not because the door would not open from the outside.

Mark McCoy, another JJ's patron, heard Fisher and McKinnis screaming at him to open the patio gate. He opened the door, and McKinnis held the door open while Fisher ran inside and told the bouncer to call 911. As he was holding the door, McKinnis attempted to calm Mitchell down, and McCoy went outside to assist. McCoy tried to calm Mitchell

down and asked him to leave. During this exchange, Mitchell cut McCoy's wrist with the knife.[2]

Concerning the nature and extent of McCoy's injury, the jury heard evidence that the cut on McCoy's arm wrapped around his left wrist from the middle to the right and caused a "significant amount" of bleeding. He was taken to the emergency room for treatment, where Tyler McGinty, a physician's assistant, treated McCoy for a four-centimeter-long laceration to his skin and another laceration to the underlying fascia. McGinty put two sutures into the fascia and a separate row of sutures into his skin. McCoy did not sustain any long-term indication of nerve or vascular injury, but he did complain of numbness and joint pain in the area. As a result of the wound, McCoy has scarring on his left arm. He testified that as a golf professional, he had to relearn the feel of his grip. He experienced numbness in his pinky, which impacted everything from typing on a keyboard to getting dressed.

On appeal, Mitchell argues that this evidence was insufficient to sustain his conviction for first-degree battery. He first notes that McCoy did not testify what sort of object hit him. The jury, however, heard evidence that Mitchell pulled a knife from his pocket and flipped it open. Moreover, McCoy testified that he felt himself "bumped from the back, [and] my arm gets just nailed, just hit by an object."

---

[2]McKinnis's jacket and shirt were also cut during the altercation, and he sustained a "nick" to his stomach. This injury was the crux of the State's second-degree-battery charge against Mitchell; however, as noted above, the jury acquitted him on this count.

Next, Mitchell argues that McCoy did not sustain a "serious physical injury" as defined by section 5-13-201. Citing the medical evidence, Mitchell points out that the injury was a four-centimeter-long laceration that "only needed sutures to repair." He contends that McCoy did not testify about the type of medical treatment he received, did not testify that he sustained any injury to any part of his body other than his wrist, and complained only of pain and numbness around the wound.

Mitchell's argument is not well taken. Whether a victim has sustained serious physical injury as well as the question of temporary or protracted impairment are issues for the jury to decide. *Bangs v. State*, 338 Ark 515, 998 S.W.2d 738 (1999). In determining whether a physical injury exists, a jury may consider the severity of the attack and may rely on its common knowledge, experiences, and observations in life to make this determination. *Chambers v. State*, 2020 Ark. App. 54, 595 S.W.3d 371; *Linn v. State*, 84 Ark. App. 141, 133 S.W.3d 407 (2003). It is not necessary that the impairment be permanent, but only protracted, *Bell v. State*, 99 Ark. App. 300, 259 S.W.3d 472 (2007), and the fact that the victim ultimately recovers has no bearing on whether the injury sustained is serious. *Brown v. State*, 347 Ark. 308, 65 S.W.3d 394 (2001). Moreover, expert medical testimony is not required to prove serious physical injury. *Johnson v. State*, 2017 Ark. App. 71, 510 S.W.3d 298.

Here, the jury heard evidence as set forth above that supports its finding that Mitchell committed the offense of first-degree battery. McCoy suffered a cutting wound to his arm deep enough to require multiple sutures to close and that resulted in a scar and caused

5

McCoy to continue to experience numbness in the area two years later. In *Bangs*, *supra*, the supreme court affirmed a first-degree-battery conviction when the victim sustained five-centimeter lacerations to her skull that required staples to close. In *Huggins v. State*, 2021 Ark. App. 74, 618 S.W.3d 187, this court affirmed a first-degree-battery conviction when the defendant hit the victim with a glass bottle that shattered; the victim required multiple stitches to close the wound, and was left with a scar that ran from her elbow down her forearm. The jury, sitting as trier of fact and using its common knowledge, was able to see McCoy's injuries and determined that he sustained a serious physical injury when Mitchell cut his wrist with a knife. We therefore hold that there was substantial evidence of serious physical injury and affirm Mitchell's conviction for first-degree battery.

## II. *Motion for Substitution of Counsel*

In what is actually his first point on appeal, Mitchell argues that it was erroneous for the circuit court to deny his motion for substitution of counsel. A circuit court's ruling on a defendant's request for substitution of counsel is reviewed for an abuse of discretion. *See, e.g.*, *Conic v. State*, 2021 Ark. App. 185, 624 S.W.3d 322. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Hopkins v. State*, 2017 Ark. App. 273, 522 S.W.3d 142. In addressing this argument, we will make a careful examination of the proceedings and hearings that occurred before Mitchell's jury trial.

Shortly after the incident involving McCoy, Mitchell was arrested but released from custody. He appeared pro se in the Benton County Circuit Court on March 11, 2019, and asked if there was any way he could get a public defender. The court agreed and directed him to have either a private attorney or a public defender at his next hearing as a condition of release. On July 8,[3] Mitchell was arraigned and filled out an affidavit of indigency. The court found him to be partially indigent and appointed a public defender, Sam Hall. Mitchell then pled not guilty, and the court set an omnibus hearing for August 12. Hall represented Mitchell at the August 12 omnibus hearing and at numerous other pretrial status hearings. Eventually, the court set a May 4, 2021,[4] trial date with a pretrial hearing on April 15. Throughout the entire pretrial process, the court frequently directed Mitchell to keep in touch with his attorney, and Mitchell never expressed any concerns about Hall's representation of him.

On March 18, 2021, before the April 15 pretrial hearing, Alex Morphis of the James Law Firm filed a motion for discovery and disclosure on Mitchell's behalf. Bill James then filed a motion for substitution of counsel on March 24, asking the court to authorize the withdrawal of Sam Hall and substitute James as Mitchell's attorney of record.[5]

---

[3]Mitchell failed to appear at arraignments scheduled for April 22 and June 10.

[4]Primarily because of scheduling complications brought on by the coronavirus pandemic, the court postponed and rescheduled jury-trial settings multiple times.

[5]James filed multiple other motions with the court throughout April, although the court had not yet acted on the motion for substitution of counsel.

The court conducted the pretrial status hearing on April 15. At this hearing, Hall, as the court-appointed public defender, appeared and represented Mitchell. Morphis also appeared and asserted that he was representing Mitchell. Cognizant of the looming jury trial scheduled for May 4, the following colloquy then ensued between the court and both counsel:

HALL: Your Honor, I would be––I would be ready for that [the May 4 trial date]. However, [Mitchell] has hired the Bill James Law Firm and they've filed––

COURT: Well, that's fine.

HALL: ––several motions.

COURT: He can hire––he can hire whoever he wants. I don't see an order in the file anywhere that granted the motion to substitute counsel. Am I mistaken, Mr. Hall?

HALL: There was no order, Your Honor, filed.

COURT: Thank you. He can file a motion asking the Court to change counsel. The problem is I have a jury trial set for May the fourth and I'm not going to change counsel at this late in the game. So defense motion––

HALL: Yes, Your Honor.

COURT: Defense motion to substitute counsel is denied.

At this point, Morphis addressed the court about the May 4 trial date as follows:

MORPHIS: Your Honor, we can be prepared to move forward on May 4.

COURT: No, sir. Here's the problem with that. . . . If I change counsel right now and there's some issue, it's an automatic Rule 37 problem. So I'm not changing counsel. We've got . . . a jury set for May the fourth. Motion to substitute counsel is denied.

8

Hall asked whether the James Law Firm would be considered "on board as . . . co-counsel on the trial date," as that might "build in some issues with appeal." The court agreed there might be issues, but no one had moved to serve as co-counsel. Hall then asked the court to have Mitchell contact him and let him know what he wanted to do and represented that he was prepared to go forward with the trial on May 4.

On the morning of May 4, Hall appeared to represent Mitchell at the scheduled jury trial, which was once more postponed. Although the trial did not occur, the court re-addressed the substitution-of-counsel issue in the following exchange:

COURT: Now, Mr. Hall, last time I believe Bill James's office had filed a motion to substitute counsel, which I denied because we were too close to the jury trial date. I did not prohibit––and I want it to be clear––I did not prohibit either Bill James's firm or another firm if they want to be as co-counsel. If they want to file their motion, I certainly will entertain that. But I just want to make clear on the record I wasn't prohibiting co-counsel, what I didn't want to do is change counsel this close to trial and create an issue.

HALL: Yes, Your Honor. And so I know there was subsequent conversations with the James Law Firm. I did speak with Mr. Morphis at the James Law Firm and he indicated to me that they weren't going to be co-counsel.

COURT: All right, Mr. Mitchell, I'm confident you heard that but what Mr. Hall had stated to the Court was that he had talked to Mr. Morphis with the James Law Firm and the James Law Firm is not wanting to be co-counsel or even take over the case. But I do want you to understand I'm not prohibiting you, Mr. Mitchell, if you want co-counsel or you either want a change of counsel, I'll consider it, but the problem was at that late date I didn't want to change counsel so close to the trial date. So if you still want to do that, I just want to make sure you understand I'm not prohibiting that. If you want that done, then please contact additional counsel to find out what you want to do. Okay?

9

MITCHELL:     Yes, sir, I will.

The court then scheduled another pretrial status hearing for May 10 and set a new jury-trial date of May 18.

At the May 10 status hearing, Hall once again appeared for the defense. After some evidentiary issues were discussed, Mitchell asked to address the court. He explained that his wife had talked to Hall on several occasions, and she believed he was "not the attorney for" him. Mitchell asked the court to reconsider the matter, and the court replied as follows:

COURT:     Well, Mr. Mitchell, there's been no motion filed by any other law firm asking to join as co-counsel or substitution of counsel. We've got trial here in eight days. So I'm not going to change--I'm not going to change counsel at this point, Mr. Mitchell. I'm not going to do that. Mr. Hall has been in this court for years, eight years if I'm not mistaken. He's tried several jury trials in this court. He's conducted himself very competent.

MITCHELL:     I have [unintelligible simultaneous speech]--

HALL:     Mr. Mitchell--

MITCHELL:     I'm sorry, I don't mean to cut you off, Your Honor. I do understand where you're coming from. I truly do. But in conversation me and Mr. Hall had with me and my family is that I'm going to lose this jury trial. He's one hundred percent sure of that. So he's going in there with doubt in his mind. I can have my wife to testify to that. He told her that.

COURT:     All right. Well, there's no motion--

MITCHELL:     So if he's going in there with doubt in his mind, why would I even have an attorney to defend me? There's no one to defend me.

COURT:     There's no motion pending, Mr. Mitchell. I'm going to go ahead and keep this trial on May the 18th. Mr. Hall is going to be your attorney of record on the case.

Just before the hearing concluded, the State noted that it would object to "further interference by other attorneys," asserting that Hall knew the case well and had been "extremely diligent in his participation." The court thanked the State and advised Mitchell that he would need to appear in person on May 18. Mitchell said that he would and then added, "I'll go hire me an attorney." He did not, however, hire another attorney, and the jury trial proceeded with Hall representing him.

On appeal, Mitchell argues that when the circuit court denied his motion for substitution of counsel, he was denied his Sixth Amendment right to counsel of his choice. Mitchell has a right to counsel of choice grounded in the Sixth Amendment to the United States Constitution and guaranteed by article 2, section 10 of the Arkansas Constitution. While constitutionally guaranteed, however, Mitchell does not have an absolute right to counsel of his choosing and may not exercise his right to frustrate the inherent power of the court to command an orderly, efficient, and effective administration of justice. *Bullock v. State*, 353 Ark. 577, 111 S.W.3d 380 (2003). The purpose of the right is to "guarantee an effective advocate for each criminal defendant, rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). Once competent counsel is obtained, any request for a change in counsel must be considered in the context of the public's interest in the prompt dispensation of justice. *Thomas v. State*, 2014 Ark. App. 492, 441 S.W.3d 918.

In support of his argument that he was denied his Sixth Amendment right to counsel, Mitchell relies solely on *Arroyo v. State*, 2013 Ark. 244, 428 S.W.3d 464. Citing *Arroyo*, Mitchell argues that the circuit court summarily denied his motion to substitute counsel without allowing him an opportunity to be heard on the matter. He thus contends that the court abused its discretion by failing to engage in the proper balancing of his constitutional right to counsel of his choice against any countervailing governmental interest. We disagree.

In *Arroyo*, the defendant and his wife were charged with multiple drug offenses and were both represented by the same private counsel, Hensley. At a pretrial hearing, a new attorney, Adcock, entered a conditional appearance and asserted he had been retained by Mr. Arroyo, but his representation was contingent on his being able to obtain a continuance because he could not be ready for the jury trial that was set to begin the next day. The court denied the continuance and proceeded to trial with the original attorney the next day. Arroyo was convicted at a jury trial, and we affirmed his conviction on direct appeal.

Arroyo subsequently petitioned for postconviction relief, which the circuit court also denied, finding that the outcome of Arroyo's trial would not have been any different if the motion for substitution of counsel had been granted. Arroyo then appealed the denial of his postconviction relief to the supreme court.

The supreme court reversed the denial of postconviction relief because the circuit court "applied the wrong test to Appellant's choice-of-counsel argument when it determined that Appellant was not entitled to postconviction relief because he had failed to demonstrate that the outcome of his trial would have been different had his new attorney acted as trial

12

counsel and a continuance had been granted." *Id.* at 4, 428 S.W.3d at 468. This was so because when the "right to be assisted by counsel of one's choice is wrongly denied . . . it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." *Id.* (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006)). Instead, the circuit court should have engaged in a balancing test, considering the defendant's "right to choice of counsel against the needs of fairness and the demands of [the court's] calendar. *Id.* at 7, 428 S.W.3d at 470. The court reasoned that

> [a] circuit court "certainly may consider how last minute continuances . . . tread upon the rights of parties and the demands of a court's calendar." [*United States v. Sellers*, 645 F.3d 830, 838 (7th Cir. 2011).] The key, however, is that these legitimate considerations must be balanced against the reasons in support of the motion for a continuance to accommodate new counsel." *Id.* at 838–39.

*Id.* at 9, 428 S.W.3d at 470.

Mitchell puts the entire focus of his argument solely on the April 15 hearing at which the circuit court refused to allow him to change counsel. Admittedly, if we were to view this hearing in a vacuum, we might agree that the court refused to substitute counsel without balancing Mitchell's desire for different counsel against the "needs of fairness and the demands of the court's calendar." *See King v. State*, 2019 Ark. App. 531, at 5, 589 S.W.3d 420, 423. The April 15 hearing, however, was not an isolated incident nor the only proceeding at which the matter was addressed.

When considering the context of the entire pretrial proceedings, it is apparent that the circuit court did more than summarily decide the motion. As demonstrated by the colloquies set forth above, the court was gravely concerned with the fact that the case had

been pending on its docket for over two years. The trial had been continued multiple times (largely because of the COVID pandemic but also frequently at Mitchell's request). The court repeatedly stated that it was amenable to considering the option of having the James Law Firm work as co-counsel with the public defender (an offer James rejected). Stated another way, there was no "unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'" that violated Mitchell's right to assistance of counsel. *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983). On the whole, we are unable to conclude that the circuit court abused its considerable discretion in denying Mitchell's motion for substitution of counsel.

Affirmed.

ABRAMSON and BROWN, JJ., agree.

*James Law Firm*, by: *William O. "Bill" James, Jr.*, and *Scott J. Kadien*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Michael Zanzari*, Ass't Att'y Gen., for appellee.